IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 12, 2019

## CHRIS SCHAEFFER v. AMANDA PATTERSON

**Appeal from the Juvenile Court for Shelby County**
**No. BB9959          David S. Walker, Special Judge**

_____

### No. W2018-02097-COA-R3-JV

_____

Father appeals the trial court's decision allowing Mother to relocate with the parties' daughter from the Memphis area to Blytheville, Arkansas. Father also appeals the trial court's award of attorney's fees to Mother. Applying the amended version of Tennessee Code Annotated section 36-6-108 based on the parties' stipulation, we conclude that the trial court did not abuse its discretion in finding that relocation was in the child's best interest. We also affirm the trial court's award of attorney's fees but decline to award attorney's fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and KENNY ARMSTRONG, J., joined.

Stuart Breakstone and Adrian Vivar-Alcalde, Memphis, Tennessee, for the appellant, Chris Schaeffer.

James W. Harris, Blytheville, Arkansas, for the appellee, Amanda Patterson.

### OPINION

### I. BACKGROUND

The parties, Petitioner/Appellant Chris Schaeffer ("Father") and Respondent/Appellee Amanda Patterson ("Mother") were never married but share a daughter together, born in 2015. In 2016, Father filed a petition for joint custody of the parties' child, as well as a child adopted by Mother during the parties' relationship.[1] The Shelby County Juvenile Court ("the trial court") entered a temporary order allowing

_____

[1] The trial court denied Father any visitation with this child, as he was not the child's putative or legal father. This child is not at issue in this appeal.

Father parenting time with the child on October 28, 2016. A more detailed temporary parenting time order was entered on May 8, 2017, giving Father specified visitation. The parties were directed to exchange the child at the Shelby County Sheriff's office in Arlington, Tennessee. Following a hearing on the permanent parenting plan, the trial court issued an oral ruling providing Father with visitation; the parties' parenting time was split 60% to Mother and 40% to Father.[2] A written permanent parenting plan reflecting this arrangement was not filed until June 22, 2017. The plan provided that the parties would have joint decision-making over major decisions, that exchanges would take place at the Arlington Police Station or school or daycare. No child support worksheet was attached to the parenting plan.

In the meantime, on May 15, 2017, Mother provided Father with notice of her proposed relocation to the Blytheville, Arkansas area. This was to the be the start of contentious proceedings, in which the parties argued over not only Mother's move but also schooling for the child, child support and expenses, various hearing dates,[3] and injunctions. Initially, Father filed a petition in the trial court to oppose the relocation on May 16, 2017. Mother responded to Father's petition on May 25, 2017, seeking approval of the relocation. On December 1, 2017, Father filed a motion to declare Mother in violation of the temporary injunction prohibiting relocation without permission.[4] The motion alleged that while Father's petition in opposition to relocation was pending, Mother nevertheless relocated to Blytheville. Although the later trial testimony indicates that the trial court allowed Mother's move on a temporary basis, no written order was ever entered granting or denying Father's motion.

A trial on the petition was to be held before a judicial magistrate on July 16, 2018. Mother and her counsel were present. Father and his counsel did not appear. As such, the

---

[2] Specifically, Father has parenting time from Thursday evening to Friday evening, as well from Thursday evening to Monday morning on alternating weeks.

[3] The record contains orders continuing hearings on eight occasions, as well as disputes between counsel concerning scheduled hearings.

[4] In support, Father cited Tennessee Code Annotated section 36-6-116(a), which provides, in part, as follows:

> (a) When a petition related to child custody is filed, other than a complaint for divorce or legal separation, . . . the following temporary injunctions shall be in effect against both parties:
>
> *   *   *
>
> (4) An injunction restraining both parties from relocating any child of the parties outside this state, or more than fifty (50) miles from the other parent, without the permission of the other party or a court order . . . .

magistrate dismissed Father's petition for failure to prosecute.[5] Father filed a notice of a request for a hearing before the juvenile judge on July 18, 2018.

Mother thereafter filed a petition to be awarded back child support, as well as unpaid birthing, medical, and childcare expenses. The petition alleged that Father had not paid any child support since the child's birth in 2015, other than a single check mailed on July 7, 2018. Father responded in opposition to Mother's petition.

Trial on the relocation issue was eventually held on September 24, 2018. At the start of trial, the parties agreed to proceed under the amended version of the relocation statute, Tennessee Code Annotated section 36-6-108. The bulk of the proof consisted of the testimony of the parties and the testimony of Father's "subject matter expert" Dr. John Ciocca.

Prior to Mother's relocation, Mother lived in Cordova, Tennessee, and worked as a hair stylist. In March 2017, Mother married Step-Father, who lived and works near Blytheville, Arkansas, a distance of approximately ninety-four miles from Father's home. Step-Father has maintained his employment with the Nucor factory in Blytheville for approximately twenty years and earns over $100,000.00 per year. When the lease on Mother's hair salon was up for renewal, Mother and Step-Father determined that Mother would move to Blytheville to unify their family, including the child at issue, Mother's elder child, and eventually, Mother and Step-Father's new child. Mother testified that the move allowed her to unite her family, become a stay-at-home mother, and to be close to her large extended family. Indeed, the evidence showed that other than the child's maternal grandmother, the child's entire extended family on the maternal side resides in Blytheville. Even maternal grandmother planned to move there if Mother was allowed to relocate and could sell her home in Cordova.

Father lived in Millington, Tennessee. At the time of trial, Father lived with his fiancé and her child. Fiancé was also pregnant with the couple's first child together.

Each party took issue with various parenting-decisions made by his or her counterpart. For example, Father claimed that Mother allowed the child to be cared for by family members more than she was cared for by Mother. Father also disagreed with Mother's decision to allow the child, who was three-years old at the time of trial, to wear pull-up diapers at night. In addition, Father quarreled with Mother's refusal to enroll the child in a Pre-K program, so he enrolled the child in a program at Tipton-Rosemark Academy without Mother's consent while the relocation dispute was pending. Father insisted that he would bear the entire expense of the tuition at the academy. Father admitted, however, to having a significant judgment against him for unpaid child support, but claimed that he did not know how to pay the judgment due to not having a payment plan or a mailing address. In addition to questioning Father's promise to pay tuition,

---

[5] The order was signed by the magistrate on July 20, 2018, but the certification from the clerk that the order was mailed to the parties was not completed until July 30, 2018.

Mother objected to enrolling such a young child in a structured environment and to the location of the academy, away from her current home in Cordova. Father also wished to enroll the child in various activities during Mother's parenting time, but Mother objected due to scheduling and location.

The parties also disputed the educational opportunities and healthcare available in Blytheville. Father submitted that Tipton-Rosemark Academy was a better school than the school where Mother resided in Blytheville. Mother agreed that the school where she currently resided was not appropriate for the child, but detailed a plan for both her older child and the child-at-issue to attend an out-of-district school. Mother also promised that she would move into the better school district if necessary. Mother further testified that her family member owned a preschool for the child and that she engaged in various educational activities with the child as a stay-at-home mother. The parties also disagreed as to whether Blytheville offered the same types of extracurricular activities available to the child in the Memphis area. Father noted that although Blytheville has a local hospital, on one occasion when the child became ill, Mother chose to bring the child to Memphis's LeBonheur Children's Hospital; Father submitted that this was evidence that available healthcare for the child was better in Memphis. Despite Father's stated concern for the child's health, Father objected to the child receiving a flu shot even after he was presented with a written letter from a physician recommending the procedure.

The parenting time and exchanges were also a source of tension. The parties had previously been ordered to exchange the child at the police station near Father's home. During the pendency of this action, Father informed Mother that exchanges would now take place at his home, as he claimed his prior attorney had informed him that he could simply declare his home a daycare facility and avoid the trial court's previous order regarding the exchange location. Mother claimed that the child was often distressed prior to the exchanges, wanting instead to stay with Mother and her siblings. Father testified that the child exhibited the same behavior when leaving his custody. In addition, Mother testified that Father was often aggressive toward her. Father testified that due to these unfounded allegations, he began filming each exchange.

Father also took issue with Mother's refusal to modify the parenting plan in minor ways, such as adding an hour to Father's parenting time when requested. According to Father, Mother generally responded to these requests that the parties should follow the parenting plan. Mother testified that she had modified the schedule on at least two occasions, but admitted that she had denied Father's requests to modify parenting time several times, claiming that his requests caused considerable inconvenience, such as cutting into a planned vacation or making Mother wait in Memphis for hours after the scheduled exchange time. The parties agreed that Mother had never limited or disrupted Father's scheduled time, even after she moved to Blytheville. Mother testified that she was happy to maintain the same schedule notwithstanding the relocation, but asked that the place of exchange be moved to a more convenient location. Mother also testified that

- 4 -

once the child began school, she would consent to modification of the parenting schedule to maintain Father's 40% time with the child.

Both parties also questioned the disciplinary tactics used in the other parent's household. Father testified that the child often came to his care with bruises. He further claimed that the child informed him of harsh discipline meted out by Step-Father. Mother testified that the bruises on the child were the result of normal childhood play, that Step-Father did not inappropriately discipline the child, and that the child had made troubling comments about how Father's fiancé disciplined her own child.

Father also questioned whether Step-Father could obtain the same job by moving to Memphis. Father testified that Step-Father's employer had a factory in Memphis; Father therefore called the Memphis factory to inquire about Step-Father's possible employment. According to Father, Step-Father, as a senior employee, would have preference for any open jobs of the same type that came available at the Memphis factory.

Dr. John Ciocca, a licensed clinical psychologist, testified on behalf of Father. Dr. Ciocca generally opined that a child's best interests are served by maximizing the participation of both parents in the child's life. According to Dr. Ciocca, allowing the child to live far away from one parent reduces that parent's ability to be present for the child in everyday life, such as school events and extracurricular activities. In most cases, such a reduction in the time a parent spends with a child, Dr. Ciocca explained, can have a harmful effect on the child. According to Dr. Ciocca, contact through electronic means, such as FaceTime, is simply not a substitute for consistent, sustained, in-person contact. Dr. Ciocca admitted, however, that his testimony was of a general nature and was not specific to the parties or the child at issue in this case. Indeed, Dr. Ciocca had not evaluated either parent or the child in preparing his testimony.

The trial court issued an oral ruling on October 1, 2018, finding that relocation was in the child's best interest under section 36-6-108. The trial court's first written order concerned child support and expenses. The February 22, 2019 order directed Father to pay ongoing child support of $253.00 per month. In addition, Mother was awarded a judgment for $12,577.96 for Father's share of child care costs, health insurance premiums, and medical bills. Father's child support arrearage was set at $6,901.00, taking into account the $3,219.00 that Father had previously paid. Father's payment on these arrearages totaled $247.00 per month. The trial court also awarded Mother attorney's fees in the amount of $2,000.00.

The trial court's written order denying Father's opposition to relocation was filed on October 17, 2018. Therein, the trial court permitted Mother to relocate with the child to Blytheville, Arkansas. The trial court made no modifications to the residential schedule, other than to move the exchange location from Arlington, Tennessee to a police

precinct located nearer to downtown Memphis. Finally, the trial court awarded Mother, $14,073.64 in attorney's fees. Father filed a timely notice of appeal.

## II. ISSUES PRESENTED

Father raises two issues in this appeal, which we restate as follows:

1.  Whether the trial court erred in denying Father's petition in opposition to Mother's relocation?
2.  Whether the trial court abused its discretion in awarding Mother her attorney's fees.

In the posture of appellee, Mother also seeks an award of attorney's fees incurred on appeal.

## III. STANDARD OF REVIEW

The trial court heard this case sitting without a jury. Accordingly, we review the trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). No presumption of correctness, however, attaches to the trial court's conclusions of law, and our review is de novo. *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006) (citing *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000)). However, "we are mindful that trial courts are vested with wide discretion in matters of child custody and that the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion." *Johnson v. Johnson*, 165 S.W.3d 640, 645 (Tenn. Ct. App. 2004) (quoting *Koch v. Koch*, 874 S.W.3d 571, 575 (Tenn. Ct. App. 1993)). We recognize that "custody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility" during the proceedings, and further note that "appellate courts are reluctant to second-guess a trial court's decisions." *Id.* (*Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996)). This Court's "paramount concern" is the well-being and best interests of the child at issue, and such determinations necessarily hinge on "the particular facts of each case." *Id.* (citing *Koch*, 874 S.W.2d at 575).

Finally, the trial court's findings on credibility are entitled to great deference on appeal. *See Taylor v. McKinnie*, No. W2007-01468-COA-R3-JV, 2008 WL 2971767, at *4 (Tenn. Ct. App. Aug. 5, 2008). Where the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary. *Franklin Cty. Bd. of Educ. v. Crabtree*, 337 S.W.3d 808, 811 (Tenn. Ct. App. 2010) (citing *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002)).

## IV. DISCUSSION

## A. Relocation

Parental relocation is governed by Tennessee Code Annotated section 36-6-108. Prior to July 1, 2018, the statute provided different standards for determining whether a primary residential parent could relocate by first examining whether the parents were spending substantially equal amounts of time with the children. *See* Tenn. Code Ann. § 36-6-108(c) (2017). Only if the parties were spending substantially equal amounts of time with the children was the trial court to engage in a best interest analysis. *Id.* If the allocation of time was not substantially equal, the parent seeking to prevent the relocation had a far higher burden to prevent the relocation. *Id.*

Effective July 1, 2018, however, section 36-6-108 was amended to delete the allocation of time analysis. Instead, the amended version of the statute provides as follows:

(a) After custody or co-parenting has been established by the entry of a permanent parenting plan or final order, if a parent who is spending intervals of time with a child desires to relocate outside the state or more than fifty (50) miles from the other parent within the state, the relocating parent shall send a notice to the other parent at the other parent's last known address by registered or certified mail. Unless excused by the court for exigent circumstances, the notice shall be mailed not later than sixty (60) days prior to the move. The notice shall contain the following:

(1) Statement of intent to move;

(2) Location of proposed new residence;

(3) Reasons for proposed relocation; and

(4) Statement that absent agreement between the parents or an objection by the non-relocating parent within thirty (30) days of the date notice is sent by registered or certified mail in accordance with subsection (a), the relocating parent will be permitted to do so by law.

(b) Absent agreement by the parents on a new visitation schedule within thirty (30) days of the notice or upon a timely objection in response to the notice, the relocating parent shall file a petition seeking approval of the relocation. The non-relocating parent has thirty (30) days to file a response in opposition to the petition. In the event no response in opposition is filed within thirty (30) days, the parent proposing to relocate with the child shall be permitted to do so.

(c)(1) If a petition in opposition to relocation is filed, the court shall determine whether relocation is in the best interest of the minor child.

Tenn. Code Ann. § 36-6-108 (2018). Thus, under the amended version of the statute the trial court is required to conduct a best interest analysis in all relocation cases involving a move out of state or of more than fifty miles in which proper petitions are filed concerning the relocation. ***Id.***

Father's petition in opposition to Mother's proposed relocation was timely filed on May 16, 2017, before the effective date of the amendment to section 36-6-108. The trial on Father's petition, however, began on September 24, 2018, after the effective date of the amendment. At the beginning of trial, there was discussion of which version of the statute would be applied. Although Mother's counsel expressed some hesitation, both parties eventually agreed that the amended version of section 36-6-108 should be applied by the trial court.[6] The trial court therefore applied the amended version of the relocation statute. Neither party takes issue with this ruling on appeal. As such, based on the stipulation of the parties, we also apply the current version of section 36-6-108 to this dispute.

The trial court made detailed findings as to each of the statutory factors contained in section 36-6-108(c)(2). So as not to tax the length of this Opinion, we will consider each factor and the trial court's finding thereon in tandem.

> **(A) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the non-relocating parent, siblings, and other significant persons in the child's life; . . . .**

The trial court made the following findings with regard to this factor:

That Mother testified the minor child has two (2) siblings, ages 4 and 1, and the minor child has a very close bond with her siblings; that the mother has twenty-six (26) relatives in the Blytheville, Arkansas (Mississippi County) area, as compared to two (2) relatives in Shelby County, Tennessee; Mother testified that the maternal grandmother currently in the Shelby County, Tennessee, however, Mother testified that the maternal grandmother would also be relocating to the Blytheville, Arkansas area; that the Mother performs the majority of the parenting time; Father testified that he is engaged and his fiancé is expecting and his fiancé has a five (5) year old; and the Court heard from the paternal grandmother about the close relationship between Father and his daughter; this factor favors relocation[.]

---

[6] For example, the following exchange occurred at the beginning of trial:

> The COURT: Based on your submissions that you sent, it was my interpretation that you were in agreement with [Counsel for Father] that the revised statute effective July 1, 2018, would apply?

> [Counsel for Mother]: That's correct.

Father takes issue with the trial court's findings as to this factor, arguing that the trial court failed to take into account some of the evidence that detracts from its conclusion. For example, Father notes that although it is true that Mother has many relatives in the Blytheville area, the trial court did not consider that Mother was able to maintain her ties to her family despite living in Memphis for over a decade. Father also contends that the trial court failed to consider the child's close relationship with Father's fiancé and her daughter. Father also takes issue with the trial court's finding that Wife performed the majority of parent responsibilities, contending that "little to no evidence" was presented of this fact.

We cannot conclude that the trial court abused its discretion with regard to this factor. Here, the majority of Mother's family and support system resides in Arkansas. Even maternal grandmother, who currently lives in Memphis, plans to move to Arkansas. The child's remaining extended family in Memphis is sparse in comparison. Moreover, Father's argument that Mother and the child can maintain their family ties despite the distance somewhat undercuts his own argument that he will be unable to maintain his relationship with the child if relocation is allowed. The child's relationship with fiancé, a possible future step-sibling, and an unborn sibling also cannot overshadow the current relationship that the child enjoys with her adoptive sibling, current step-sibling, and extended family. Finally, although the evidence was somewhat limited about the allocation of parenting responsibilities, the parties agree that Mother spends sixty percent of the time with the child. Importantly, Mother also testified at trial that Father had not paid child support for child.[7] Providing financial support for a child is a necessary parenting responsibility.[8] Thus, based on both the allocation of parenting time and financial responsibility, we cannot conclude that the trial court abused its discretion in finding that Mother performs the majority of the parenting responsibilities for the child. The trial court therefore did not abuse its discretion in finding that this factor favored relocation.

> **(B) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child; . . . .**

The trial court made the following findings with regard to this factor:

> The minor child is three (3) years of age and has no special needs. Mother's salon lease expired and Mother chose not to renew to be a stay at home

---

[7] The record reflects that Father did make one payment more than a year following the filing of his petition in opposition to the relocation. This payment occurred shortly before the first hearing on the relocation matter, where neither Father nor his counsel appeared.

[8] Father's claimed inability to pay due to not knowing where to mail the support lacks credibility as Mother and Father were exchanging the child in person multiple times per month. Father therefore could have made some effort toward supporting the child.

- 9 -

mom; Mother testified that she has applied for school choice for her oldest daughter to attend Armorel school district, which is a top school in Arkansas. Mother testified that [] they would move to make sure the children could attend Armorel; that there are the same extracurricular activities in Blytheville, AR than here in Shelby County; Father questions the ability of the child to attend school in Armorel because of the school choice limitations; Father testified to his concerns with the educational opportunities in Blytheville or Armorel and had registered the child at Tipton-Rosemark Academy starting this current school year: Father testified that he is willing to pay the tuition for the child to attend Tipton-Rosemark Academy, which the court questions because he is not currently paying child support, nor has he paid anything on an outstanding judgment [] of $7.000.00; Relocation will not have a negative impact on the child's physical, educational and emotional[] development so this factor [favors] relocation[.]

Again, Father asserts that the trial court's findings as to this factor ignore crucial testimony regarding Mother's failure to enroll the child in early childhood education, which Dr. Ciocca opined was important. Father asserts that his plan to immediately enroll the child in private schooling is more reasonable and that the trial court improperly considered Father's outstanding child support arrearage, as that matter had not been finally adjudicated and the trial court sustained an objection to its consideration during trial.

First, we disagree with Father's characterization of the evidence presented of Father's arrearage. Here, Father admitted when asked that an approximately $7,000.00 judgment existed against him for child support. Although Father's counsel objected, the trial court overruled the objection and no issue has been raised on appeal as to the admissibility of this particular evidence. The trial court did appear to sustain an objection, however, as to birthing expenses for the child. Thus, the trial court's evidentiary rulings did not prevent the trial court from later considering the child support arrearage. Moreover, Mother later testified without objection that she had not received child support from Father.[9] Thus, Father's failure to pay child support was a proper matter to consider with regard to the relocation.

Furthermore, we discern no abuse of discretion in the trial court's findings with regard to this factor. Here, Mother and Father appear to disagree regarding the proper early childhood education for the child. Although Dr. Ciocca testified that early education is crucial for development, he was not retained to examine the child's development or Mother's current educational system. Thus, there is no evidence that Mother's decision to keep the child at home due to her young age is inappropriate at this time. Father also

---

[9] Again, at the time of trial, Mother had undisputedly received at least one payment from Father, albeit far after the child's birth and the initiation of these proceedings.

presented no evidence to rebut Mother's testimony that the child will be able to attend both an appropriate preschool and enriching activities in Blytheville.

Furthermore, we are troubled by Father's unilateral decision to enroll the child in Tipton-Rosemark Academy. Here, the parties' permanent parenting plan provides for joint-decision making with regard to major educational decisions. Seeking to enroll a three-year old child in a private school multiple days per week is certainly a major decision. In addition to sharing the trial court's skepticism as to Father's promise to pay the tuition for this academy, we are troubled that Father chose to enroll the child in an academy without Mother's consent. Indeed, the decision seems to benefit only Father, as the academy is close to Father's home but not to Mother's Memphis home in Cordova.

From our review of the evidence, the child is very young and has not yet started school. As such, this case does not involve the situation where a parent's marriage or employment prospects will remove a child from his or her long-standing relationships, activities, and school environment. There is also no evidence that the child in this case will have difficulty adjusting to a change in environment. While relocation may never be preferred, nothing in the record suggests that the child's physical, educational, and emotional development will be negatively impacted by the relocation. Instead, it appears that Blytheville has the same opportunities as are generally available in Memphis.

> **(C) The feasibility of preserving the relationship between the non-relocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties; . . . .**

According to the trial court,

> A parenting plan was filed in this cause on June 22, 2017 after a contested trial wherein the mother has sixty (60) percent of parenting time and father forty (40) percent. Since Mother initially filed her notice of relocating in May 2017, father has not lost any of his parenting time. Father testified that it is only ninety-four (94) miles from his house to mother's husband's house in the Blytheville area. It is approximately sixty (60) miles from Hernando Desoto bridge in Downtown Memphis to Blytheville. This is not a far move. Dr. Ciocca, who did not evaluate mother, father or child, and did not do a relative fitness evaluation, testified as a "subject matter" expert. Dr. Ciocca testified that a reduction of a powerful relationship can have harmful effects on a child, and a child's best interest is better served if father has regular access to the child. Due to the short distance and little impact on the Parenting Schedule and minimal impact to father as to transportation, this factor favors relocation[.]

Father again disagrees with the trial court's findings as to this factor. According to Father, the trial court's findings "ignor[e] the realities of raising a three-year old child" and contends that the relocation would eliminate Father's current "ready access" to the child. It is true that a relocation of a relatively significant distance will impact a parent's ability to attend events and activities when the child is not in that parent's physical custody. However, the record on appeal shows that despite the fact that Mother has been residing in Blytheville, Father's parenting time has not been reduced in any manner. Mother also testified that she is willing to make accommodations to maintain Father's liberal time with the child. Thus, the evidence shows that it has been quite feasible to maintain the same parenting schedule, and therefore the same relationship, despite the distance. The trial court therefore did not abuse its discretion with regard to this factor.

> **(D) The child's preference, if the child is twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children; . . . .**

The trial court did not consider the child's preference due to her young age. Neither party takes issues with the trial court's finding as to this factor.

> **(E) Whether there is an established pattern of conduct of the relocating parent, either to promote or thwart the relationship of the child and the non-relocating parent; . . . .**

With regard to this factors, the trial court found that "Father has not lost time since the entry of the June 2017 Parenting Plan and that Mother has promoted the child's relationship with Father and that Mother's reasons to relocate are not vindictive; this factor favors relocation[.]" Father does not dispute that he has not been denied parenting time, but finds fault in Mother's failure to make adjustments to the parenting schedule to accommodate him. Mother, for her part, testified that she did make some adjustments for Father, but admitted that she did not honor all of his requests. For example, while Father wanted the child to participate in swimming, Father's proposed location for the activity was not close to Mother's home in Cordova, but convenient only to him. Mother further testified that Father did not consult her regarding the location. Thus, again, Father finds fault in Mother's refusal to participate in activities that he has unilaterally scheduled and that lack convenience for both parties. Here, the trial court's finding that Mother has not thwarted Father's parenting is fully supported by the record.

Father also takes issue with Mother's voluntary decision to become financially dependent on Step-Father, citing **Harmon v. Harmon**, No. W2017-02452-COA-R3-CV, 2018 WL 6192233, at *13 (Tenn. Ct. App. Nov. 27, 2018) ("Mother and Step-Father contractually obligated themselves to a move to Chattanooga without consulting Father or ever discussing with him the potential consequences for his relationship with the child."). We do not disagree that Mother's voluntary decision left her with little choice

but to move to Blytheville to be supported by Step-Father. Importantly, however, *Harmon* was decided under the pre-amendment version of Tennessee Code Annotated section 36-6-108. Under that version of the statute, the courts were directed to consider the best interest factors contained in Tennessee Code Annotated section 36-6-106, including "the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents[.]" *Harmon*, 2018 WL 6192233, at *10 (citing Tenn. Code Ann. § 36-6-106(a)). Under the version of the statute at issue in this case, the inquiry is more limited, requiring only that the court consider "[w]hether there is an established pattern of conduct of the relocating parent, either to promote or thwart the relationship of the child and the non-relocating parent[.]" *But see* Tenn. Code Ann. § 36-6-108(c)(1)(H) (stating that the trial court may, in its discretion, consider the section 36-6-106 factors). There is no established pattern of Mother thwarting Father's relationship with the child, despite her perhaps "troubling" decision to make financial choices that obligated her to move to Blytheville. *Id.* at *13.

> **(F) Whether the relocation of the child will enhance the general quality of life for both the relocating parent and the child, including, but not limited to, financial or emotional benefit or educational opportunity; . . . .**

The trial court made the following findings relative to this factor:

> Father places great emphasis on this factor, specifically education and this Court finds that educational opportunities are the same in Blytheville, AR as here in Shelby County: Mother testified that she works with the minor child on numbers, letters. etc.; that the minor child's step-father is the only wage earner in the household and Mother testified that her husband earns around $100,000.00 annually; that Father testified that the step-father could transfer here to Shelby County because Nucor has a location here in Memphis: this Court found Father's testimony regarding step-father's employment to be hearsay and that step-father did not have the same employment opportunity here in Memphis: that Father testified he would pay for the private school tuition, but this Court finds that to be remarkable as Father is not currently paying child support and has an outstanding judgment in excess of $7,000.00; this factor favors relocation[.]

Father argues that the trial court improperly relied on Mother's "speculative testimony" as to the educational opportunities in Blytheville in reaching its decision as to this factor. Respectfully, we disagree.

Here, Mother testified that she has applied for her eldest child to attend Armorel, an out-of-district public school that is highly ranked. Mother produced the application for her eldest child to enroll in the preferred school. Mother is confident that her child will be

allowed to enroll in this school and that the child-at-issue, as a sibling of an enrolled child, will also be allowed out-of-district enrollment. Regardless, Mother testified that if the child is not allowed to enroll out-of-district, she and her husband are willing to move into the district. Mother also testified that her family member runs a preschool in which she plans to enroll the child but that she does not want to start school too soon. Although Mother did not provide any materials to support her testimony other than her application, her testimony was not rebutted and Father made no objection to the admissibility of this testimony on the ground that it was speculative or otherwise. Thus, the trial court had competent evidence that Mother would take whatever action was necessary to ensure that the child received a quality education notwithstanding the relocation.

In conjunction with the argument on this factor, Father also seeks a determination that Mother's move does not comply with the reasonable purpose standard contained in the pre-amendment version of section 36-6-108. As previously discussed, the parties agreed to apply the version of section 36-6-108 in effect at the time of trial, which does not contain any reasonable purpose analysis. Moreover, the caselaw cited by Father is dated. *See Rogers v. Rogers*, No. M2008-00918-COA-R3-CV, 2009 WL 1034795, at *1 (Tenn. Ct. App. Apr. 16, 2009); *Robinson v. Robinson*, No. M2003-02289-COA-R3-CV, 2005 WL 1541861, at *1 (Tenn. Ct. App. June 30, 2005); *Butler v. Butler*, No. M2002-00347-COA-R3-CV, 2003 WL 367241, at *1 (Tenn. Ct. App. Feb. 20, 2003). In 2017, the Tennessee Supreme Court clarified that the parent's burden under the reasonable purpose standard is heavy: to show that the relocation "has no reasonable purpose at all." *Aragon v. Aragon*, 513 S.W.3d 447, 466 (Tenn. 2017). This court has held that the clarified burden is "demanding." *Stringer v. Stringer*, 544 S.W.3d 714, 720 (Tenn. Ct. App. 2017). As such, we have reversed a trial court's denial of a parent's relocation even where the trial court found that the relocating party wholly lacked credibility. *Id.* at 721–23. Thus, Father's argument that this standard should be considered and the pre-2017 caselaw be controlling is simply unavailing.

On the whole, it appears that the child's educational opportunities are similar whether she resides in Memphis or Blytheville. In Blytheville, however, the child will have access to her extended family and both Mother and the child's standard of living will increase due to Step-Father's long-held, high paying job.[10] As such, the trial court's determination that this factor favored relocation is affirmed.

**(G) The reasons of each parent for seeking or opposing the relocation;**
**. . . .**

The trial court made written minimal findings with regard to this factor, essentially ruling that the reasons for relocation stated by Mother in her petition were reasonable,

---

[10] Although Father offered testimony that Step-Father had preference to relocate to another Nucor plant in Memphis, he did not testify that this plant had any immediate job openings and the trial court ultimately rejected this testimony as hearsay. Again, Father does not raise any evidentiary issues in this appeal.

- 14 -

while Father's reasons for opposing the relocation were not reasonable. The trial court's oral ruling offers additional elucidation into the trial court's reasoning:

> Mother, in her pleadings and testimony, her basic reasons are to live with her husband in Arkansas where he works for his employer for 20 years and makes $100,000 annually. There are numerous relatives that -- of mothers that live in Arkansas. Her salon lease ended in Shelby County, and she wanted to move to Arkansas to be with her husband and to be a stay-at-home mom to her three children. I find that mother's reasons for [] relocation are reasonable[,] and I find that they promote the best interest of the child.

> Father's reasons for opposing relocation: in his pleadings he emphasized education, quality of life. In his testimony, [F]ather said that education and access to health facilities are the most important reasons. I find that there are hospitals – there's a hospital in Blytheville, and that the distance to Shelby County is such a short distance that the child can continue with the same medical providers in Shelby County. I previously addressed education and quality of life. I find father's reasons for opposing relocation are not reasonable, and this factor favors relocation.

Again, Father finds error in the trial court's findings.

From our review, the purpose of Mother's relocation was to live with her spouse, to be a stay-at-home mother to her children, and to live close to extended family. This court has previously opined that while not dispositive of a relocation dispute, a desire to live with one's spouse is "an appropriate desire that takes into account the children's best interest." *Fichtel v. Fichtel*, No. M2018-01634-COA-R3-CV, 2019 WL 3027010, at *17 (Tenn. Ct. App. July 10, 2019) (citing *Harmon* 2018 WL 6192233, at *15 (denying mother's request to relocate even after acknowledging that mother's desire to create a happy and stable family unit with her new spouse "demonstrates an understanding of what is positive for the child developmentally")). We have also held that when a parent is financially able, there is nothing objectionable simply because a party chooses to be a stay-at-home parent. *See Harmon*, 2018 WL 6192233, at *13 ("We thus feel compelled to note that the evidence preponderates against the finding that Mother's decision to be a stay-at-home mother somehow raises a concern that she is unwilling or unable to facilitate a relationship between Father and the child.").

Father argues, however, that the trial court erred in failing to consider whether Mother could achieve the same result by living in Memphis. Respectfully, we disagree. Even assuming that the trial court was required to consider whether the parent's purpose for relocating could not be achieved without the relocation, there is simply no dispute that Mother's relocation will place her closer to her extended family. Father's own testimony reveals that he sometimes relied on others, such as his fiancé to care for the child during

his working hours.[11] Once maternal grandmother moves out of Shelby County, Mother will have no such support system in Memphis; her support, instead, will reside completely in Arkansas.

Additionally, Father asserts that he should not be required to make accommodations so that Step-Father can work in Blytheville, as Step-Father "could just as easily moved to Shelby County, while maintaining a job in Blytheville." As an initial matter, no evidence was presented specifically as to the feasibility of Step-Father living in Memphis and commuting to Blytheville. Instead, the argument made at the trial on this cause was that Step-Father could obtain the same employment at the Memphis factory of his employer. The trial court, however, rejected Father's evidence that Step-Father could easily transfer his employment to Memphis.

Moreover, the evidence shows that despite Mother's move to Blytheville during the pendency of this action, Father was not required to make a single accommodation to maintain his parenting time. Mother continued to meet Father at the designated place and never prevented him from exercising his parenting time. Although the trial court's parenting plan allowing Mother to relocate does require Father to travel farther for the exchange of the child, the distance Father must travel is not even outside the county where he lives. This is not a significant burden on Father.

In sum, we cannot conclude that the trial court erred in finding that this factor weighs in favor of Mother. Although there are certainly drawbacks to moving from a larger metropolis to a smaller town, Mother has valid, sensible reasons for her desire to move to Blytheville. Other than a very understandable and reasonable desire not to be removed from the child, Father's objections to Blytheville as a home for his child do not carry great weight. As such, we discern no abuse of discretion as to this factor.

**(H) Any other factor affecting the best interest of the child, including those enumerated in § 36-6-106(a).**

With regard to this factor, the trial court considered the short distance of the relocation as a factor in favor of Mother's request. Father offers little argument to rebut this finding, essentially reiterating his position as to the previous factors regarding the accommodations that he is required to make due to the distance. Again, we are not persuaded by these arguments.

In sum, the trial court found that all of the factors favored relocation in this case. Considering the totality of the circumstances, we agree. Here, the child is young and her stability will not be greatly impacted by a short move to a neighboring state. Although the

---

[11] Father testified that he is scheduled to work during some of the time he has with the child. Father claimed that he took vacation time to be with the child during this time. Father later testified, however, that fiancé took the child on an outing while he was at work, suggesting that there is in fact time in which Father has to have others care for the child while he is working.

move will undoubtedly reduce Father's ability to be present for the child outside of his designated parenting time,[12] the move has had no impact on Father's designated parenting time and the parenting plan ordered by the trial court makes no alterations to Father's parenting time except to somewhat increase his travel time. The child's education and extracurricular activities will also not be negatively impacted by the move. Finally, the child benefits from the move because it provides for an increased standard of living and the additional support of Mother's extended family. Under these circumstances, we cannot conclude that the trial court abused its discretion as to the relevant best interest factors or as to its overall finding that relocation was in the child's best interest.

### B. Attorney's Fees

The final two issues in this case concern attorney's fees. Father asserts that the trial court erred in awarding Mother her attorney's fees at trial. Mother contends that the trial court was correct to award her attorney's fees and that she should further be awarded fees incurred in this appeal. Relevant to this issue, Tennessee Code Annotated section 36-6-108 provides that "[e]ither parent in a parental relocation matter may recover reasonable attorney fees and other litigation expenses from the other parent in the discretion of the court." Tenn. Code Ann. § 36-6-108(f). As evident from the express language of section 36-6-108(f), an award of fees in a relocation case is left to the sound discretion of the trial court. *Fichtel v. Fichtel*, No. M2018-01634-COA-R3-CV, 2019 WL 3027010, at *25 (Tenn. Ct. App. July 10, 2019). We have previously explained that

> A trial court abuses its discretion "only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). Under this standard, we will not substitute our judgment for the judgment of the trial court. *Id.* (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)). The abuse of discretion standard "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,'" and therefore "'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010) (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).

*Allen v. Albea*, 476 S.W.3d 366, 373 (Tenn. Ct. App. 2015).

---

[12] The child does not yet attend school or activities that Father would be allowed to attend even not during his parenting time. Thus, for purposes of this narrow issue, we simply credit Father's contention that he would attend these events if given the opportunity.

Father does not take issue with the hourly rate charged by Wife's attorney, the hours spent working on the case, or whether the overall amount of fees awarded in this case was reasonable. Instead, Father contends that the trial court abused its discretion in awarding any attorney's fees to Mother where the trial court did not first find that Mother was economically disadvantaged and in need of assistance in paying the fees. In support, Father cites **Hudson v. Hudson**, No. M2008-01143-COA-R3-CV, 2009 WL 3631017 (Tenn. Ct. App. Nov. 3, 2009), *app. dismissed and remanded*, 328 S.W.3d 863 (Tenn. 2010). In **Hudson**, the trial court awarded the mother a judgment for attorney's fees relative to the father's petition in opposition to relocation. *Id.* at *11. The proof showed, however, that the mother received considerable assets, alimony, and child support relative to the parties' divorce, resulting in assets in excess of $1 million. *Id.* In ruling that the trial court abused its discretion, the Court of Appeals took issue with the trial court's failure to consider that the mother had the means to pay her own attorney's fees. *Id.* Additionally, the court noted that the relocation favored the mother's interests more than the child's and that the award appeared to punish Father for his behavior that led to Mother's desire to relocate. *Id.* at *11–12.

The court came to a contrary result in a more recent case involving attorney's fees relative to a divorce. In **Olinger v. Olinger**, No. E2017-02133-COA-R3-CV, 2019 WL 927766 (Tenn. Ct. App. Feb. 25, 2019), *perm. app denied* (Tenn. Aug. 14, 2019), this Court, in split-decision, affirmed an award of discretionary attorney's fees despite the fact that the spouse awarded the fees was not economically disadvantaged to the spouse ordered to pay the fees. *Id.* at *3. Rather, the majority of that panel concluded that other considerations favored an award of attorney's fees. *Id.* Judge Michael Swiney dissented, holding that because the attorney's fees were in the form of alimony, the analysis begins with the question of whether one spouse is economically disadvantaged. *Id.* at *4.

Here, Wife is arguably not economically disadvantaged compared to Husband. Although Wife has no income as a stay-at-home mother, she voluntarily chose to give up employment earning approximately $40,000.00 per year. Her husband currently earns over $100,000.00 per year. The child support worksheet in the record sets Father's annual income at $47,724.00.[13] Still, this is not the case where Mother has assets in excess of $1 million in which to pay her attorney's fees, unlike the mother in **Hudson**. 2009 WL 3631017, at 11.

The trial court, however, appears to have considered other facts in its award of attorney's fees, including the contentiousness of the proceedings. The record supports the trial court's finding, as the technical record shows that Father requested several continuances of various hearings and failed to appear at a scheduled trial, leading to the dismissal of his petition in opposition, only to immediately seek rehearing of that decision. Father also engaged in a rather contrived attempt to require Mother to exchange

---

[13] Father uses Step-Father's income as evidence that she has a greater ability to pay. Although Father resides with his fiancé, the record contains no proof as to her income.

the child at his residence, rather than a previously ordered location. Moreover, Mother testified that Father threatened to bankrupt her by prolonging the proceedings.[14] Although the trial court should often refrain from awarding attorney's fees punitively for the behavior of the parties outside of court, such as the fault in a divorce, courts have upheld attorney's fees awards, in part, on findings that one party unnecessarily increased the contentiousness of the dispute or prolonged the proceedings. *See Kanski v. Kanski*, No. M2017-01913-COA-R3-CV, 2018 WL 5435402, at *11 (Tenn. Ct. App. October 29, 2018); *Sherrod v. Wix*, 849 S.W.2d 780, 784 (Tenn. Ct. App. 1992) (affirming an award of discretionary attorney's fees in a child custody matter where the parent "prolonged the proceedings and added significantly to their expense"). *But see Foxx v. Bolden*, No. E2002-02831-COA-R3-CV, 2004 WL 256572, at *7 (holding that because attorney's fees in a divorce are a form of spousal support, awarding fees as a sanction for contumacious litigation behavior is inappropriate in the absence of a proper motion for sanctions); *cf. Hudson*, 2009 WL 3631017, at *12 (holding that the trial court improperly considered the father's misconduct outside of court in awarding attorney's fees).

Importantly, the attorney's fees requested are not in the nature of alimony but involve a matter of child custody. Considering other statutes authorizing awards of attorney's fees in the child custody context, this Court has held that attorney's fees protect the child's access to the courts, and the award of fees in this arena is nearly commonplace. *See Davis v. Hood*, No. M2014-02490-COA-R3-CV, 2016 WL 3662434, at *10 (Tenn. Ct. App. June 30, 2016) (involving fees under Tennessee Code Annotated section 36-5-103(c)) (citing *Deas v. Deas*, 774 S.W.2d 167, 170 (Tenn. 1989); *Sherrod*, 849 S.W.2d at 784). As such, we have held that "ability to pay is not the determinative factor for an award of attorney's fees" in matters involving child custody or support. *Bjork v. Bjork*, No. 01A01-9702-CV-00087, 1997 WL 653917, at *8 (Tenn. Ct. App. Oct. 22, 1997) (involving section under 36-5-103(c)) (citing *Sherrod*, 849 S.W.2d at 785 ("[W]e find that ability to pay should not be the controlling consideration with regard to awards for legal expenses in custody or support proceedings. It is certainly a factor to be considered, but trial courts may award attorney's fees without proof that the requesting party is unable to pay them as long as the award is just and equitable under the facts of the case.")). Mother was the prevailing party in this case on all of the issues presented. Although the relocation certainly serves Mother's interest, our decision to affirm the trial court's best interest findings means that the relocation also serves the child's best interest. Under the totality of the circumstances, we cannot conclude that Father met his burden to show an abuse of discretion in the trial court's award of attorney's fees in this case.

Mother also requests her attorney's fees, either under section 36-6-108, or for a frivolous appeal under Tennessee Code Annotated section 27-1-122.[15] Under either

_____

[14] Of course, Father testified that Mother informed him that she would "stop at nothing" to prevent his access to his daughter. It appears, however, that the trial court ultimately placed the blame for the contentiousness of the proceedings on Father.

[15] Section 27-1-122 provides for discretionary attorney's fees "[w]hen it appears to any reviewing

section, the award of attorney's fees on appeal is discretionary. Although Father was not successful in his appeal, we cannot conclude that his appeal was frivolous. Moreover, given the substantial award of attorney's fees in the trial court, the relative simplicity of this case on appeal, and the financial status of the parties, we exercise our discretion to decline an award of attorney's fees on appeal.

## V. CONCLUSION

The judgment of the Shelby County Juvenile Court is affirmed. Costs of this appeal are taxed to Appellant Chris Schaeffer, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

court that the appeal from any court of record was frivolous or taken solely for delay[.]"