IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 16, 2017 Session

## RONALD STRINGER v. ALECIA STRINGER

**Appeal from the Circuit Court for Davidson County**
**No. 15D-1423       Philip E. Smith, Judge**

_____

**No. M2016-01314-COA-R3-CV**

_____

This post-divorce case concerns parental relocation. Mother, the primary residential parent, sought to relocate to Texas, citing an employment offer. Father objected to the relocation, arguing that the move had no reasonable purpose and that Mother's real purpose for relocating is to be closer to her boyfriend. The trial court denied mother's request to relocate based on mother's perjury in the trial court's presence and on the finding that the real purpose of mother's proposed move is to be closer to her boyfriend. We reverse the trial court's decision because we determine that father failed to carry his burden of proof.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and BRANDON O. GIBSON, JJ., joined.

Thomas F. Bloom, Nashville, Tennessee, for the appellant, Alecia Stringer.

Thomas F. Mink, Charles M. Duke, and William M. Leech, Nashville, Tennessee, for the appellee, Ronald Stringer.

## OPINION

### BACKGROUND

Plaintiff/Appellee Ronald Stringer ("Father") and Defendant/Appellant Alecia Stringer ("Mother") married in 1998. During the marriage, the parties moved often because of Father's job as a preacher, living in Alabama, Arkansas, Georgia, and Texas. A daughter ("the child") was born in November 2006. In the summer of 2013, the parties

separated, and Mother moved to Middle Tennessee. Father at some point after moved to Lawrence County, Tennessee, to be closer to the child. On April 29, 2014, the parties were divorced in Texas, and on July 28, 2015, the decree of divorce nunc pro tunc was domesticated in Tennessee. Mother was designated the primary residential parent, and Father was named the alternate residential parent.

Mother returned to Texas in March 2015 and June 2015 to visit with an old high school friend ("boyfriend"). In a letter dated August 3, 2015, Mother notified Father by certified mail that she intended to relocate to Houston, Texas, in order to accept an employment opportunity; Father received this letter on August 6, 2015. On September 4, 2015, Father filed a petition in opposition to the relocation in the Davidson County Circuit Court, alleging that the proposed relocation was vindictive and not in the child's best interest. Father further alleged that Mother was dating someone who was living in Texas and that Mother and the child would live with him if Mother were allowed to relocate. Mother's answer on September 10, 2015, alleged that the job opportunity in Texas offered her the opportunity to work full-time as a piano, voice, and kindermusik teacher,[1] allowing her to utilize her degree in music education as well as provide increased income. Mother further asserted that she had been unable to secure similar employment in Tennessee. Although Mother denied most of the allegations in Father's petition, Mother "admit[ted] that she has a boyfriend who lives in Texas."

A trial was held on May 18, 2016. Mother was called first as an adverse witness as part of Father's case-in-chief. Shortly into Mother's testimony, the trial judge began questioning Mother about the nature of her relationship with the boyfriend. Mother asserted that the individual was just a friend and that they were "not dating." When the trial judge questioned whether Mother had a romantic relationship and had sex with the boyfriend in Texas, Mother responded in the negative.[2] After the trial judge allowed Mother to confer with counsel, Mother admitted that she "did have sex [with the boyfriend in June 2015] for one time and had a relationship then."[3] Mother explained that she was confused about which time period the trial judge was referring to, because, according to Mother, "I don't have sex with him now[.]" The trial judge found Mother in criminal contempt and stated that "it's going to be tough for me to believe anything else [you] say after that admission." Although Mother initially stated that she went to Texas to look for a job, Mother eventually admitted that she was more serious about the job search in June 2015.

---

[1] According to Mother, kindermusik is "[e]arly childhood education for ages seven and under."
[2] The parties agree that Mother admitted to the relationship in her deposition although the deposition has not been made part of the record on appeal. According to Mother's brief, "it was not a disputed fact" but "[f]or whatever reason, . . . Mother offered the excuse of confusion, she denied to [the trial judge] that she had had sex with the [paramour]."
[3] When counsel for Father continued with his questioning of Mother later, Mother admitted that she had sex with the boyfriend both in March 2015 and June 2015.

Otherwise, Mother generally testified that she moved to Middle Tennessee from her home state of Texas because she needed her parents' and sister's financial support after her separation from Father. Mother testified that she was employed as a substitute teacher on occasion but never landed a permanent position in Tennessee. Mother eventually developed an online business managing web sites and blogs; however, none of her various efforts ever netted more than $10,000.00 per year. Although Mother has an Arkansas teaching license, Mother does not have one in Tennessee. Mother testified that she could apply for a Tennessee teaching license "[i]f there was a need to." According to Mother, rent in Tennessee and Texas would be the same, approximately $1,300 per month. Mother asserts that the job offer that she received in Texas would eventually allow her to teach in her chosen profession.

Father generally testified about his parenting schedule and his efforts in finding a job as a preacher in Tennessee to be near the child. Father testified that his current girlfriend lives in Knoxville, Tennessee. Father admitted that Mother never made any substantial income from her music career or online marketing because her career was secondary to his during the marriage.

Mother's prospective employer in Texas, Skiles Kelly, testified that he owns three music studios. Mr. Kelly testified that, although the teaching job that he initially offered to Mother was no longer available to her because all of the children have since been placed with another teacher, he offered Mother a job as a part-time administrative assistant at $15.00 per hour for 25 hours per week. However, Mr. Kelly testified that if the school were to take on new piano or voice students, Mother would receive those students. According to Mr. Kelly, teachers in his studios make between $1,000.00 to $3,000.00 per month.

On May 27, 2016, the trial court entered an order finding Mother in willful direct criminal contempt and fined her $50.00. On July 29, 2016, the trial court entered a final order, giving no weight to Mother's testimony because "if you violate that oath, then there are consequences that the [c]ourt believed nothing [Mother] said." According to the trial court, no proof was presented showing that the proposed relocation would be harmful to the child or that the move is for vindictive purposes. With respect to the ground that the move lacks a reasonable purpose,[4] the trial court found that Mother was seeking to move to Texas to be close to the boyfriend, not because of her career in music, that she "is using employment in Houston, Texas, as a basis for the move when she has made no effort to seek employment in the Middle Tennessee area." The trial court further found that most of Mother's support system is located in Tennessee or Northern Alabama. As such, the trial court concluded that Father carried his burden of establishing

---

[4] Although the reasonable purpose ground was not alleged in Father's petition, there appears to be no dispute that this ground was tried by consent.

that the relocation did not have a reasonable purpose.  In addition, the trial court noted that Mother waived further hearing as to the best interest of the child. Mother appeals.

## ISSUE

Mother raises the following issue for our review: Whether the trial court abused its discretion in rejecting Mother's testimony in its entirety and in failing to find that the proposed relocation was reasonable?

## STANDARD OF REVIEW

The trial court heard this case sitting without a jury. Accordingly, we review the trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). No presumption of correctness, however, attaches to the trial court's conclusions of law, and our review is de novo. *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006) (citing *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000)). Additionally, the trial court's findings on credibility are entitled to great deference on appeal. *See Taylor v. McKinnie*, No. W2007-01468-COA-R3-JV, 2008 WL 2971767, at *4 (Tenn. Ct. App. Aug. 5, 2008). Where the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary. *Franklin Cnty. Bd. of Educ. v. Crabtree*, 337 S.W.3d 808, 811 (Tenn. Ct. App. 2010) (citing *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002)).

## DISCUSSION

The parties first disagree as to whether the trial court's determination that Mother was not credible and whether the rejection of her entire testimony should stand.  Even without disturbing the trial court's credibility determination, however, we hold that Father failed to meet his burden of proof in establishing that Mother's proposed relocation lacked a reasonable purpose.  We begin our analysis with the statutory requirements contained in Tennessee's Parental Relocation Statute.

Tennessee's Parental Relocation Statute is found in Tennessee Code Annotated section 36-6-108.  The statute sets out different standards for relocation, depending on whether the parents spend substantially equal intervals of time with the child.  When parents spend substantially equal amounts of time with the child, "[n]o presumption in favor of or against the request to relocate with the child shall arise," and the trial court must determine whether the relocation is in the child's best interest. Tenn. Code Ann. § 36-6-108(c).

Where, as in this case, the parents do not spend substantially equal intervals of time with the child,[5] Tennessee Code Annotated section 36-6-108(d)(1) provides for a much different standard:

> If the parents are not actually spending substantially equal intervals of time with the child and the parent spending the greater amount of time with the child proposes to relocate with the child, the other parent may, within thirty (30) days of receipt of the notice, file a petition in opposition to removal of the child. The other parent may not attempt to relocate with the child unless expressly authorized to do so by the court pursuant to a change of custody or primary custodial responsibility. The parent spending the greater amount of time with the child shall be permitted to relocate with the child unless the court finds:
>
> (A) **The relocation does not have a reasonable purpose**;
> (B) The relocation would pose a threat of specific and serious harm to the child that outweighs the threat of harm to the child of a change of custody; or
> (C) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.

Tenn. Code Ann. § 36-6-108(d)(1) (emphasis added). "[W]here the parents are not spending substantially equal time with their child, section 36-6-108 includes a legislatively mandated presumption in favor of permitting the parent spending the most residential parenting time with the child to relocate with the child." *Aragon v. Aragon*, 513 S.W.3d 447, 462 (Tenn. 2017); *see also* Tenn. Code Ann. § 36-6-108(d) (providing that the custodial parent "shall be permitted to relocate with the child" unless the trial court finds one of the three enumerated grounds). "The petitioner—the parent opposing relocation—bears the burden of proving grounds for denying permission to relocate." *Aragon*, 513 S.W.3d at 462. If the petitioner cannot prove one of the grounds by a preponderance of the evidence, the relocating parent will be allowed to move with the child. *See id.* at 456 n.8.

Our consideration in this case is guided by the Tennessee Supreme Court's recent decision in *Aragon v. Aragon*, 513 S.W.3d 447 (Tenn. 2017).[6] Prior to the *Aragon*

---

[5] The parties agree that Mother spends substantially more time with the child.

[6] As an initial matter, we note that the Tennessee Supreme Court's decision in *Aragon v. Aragon*, 513 S.W.3d 447 (Tenn. 2017) was filed after briefing was already completed in this case. Father filed a motion for supplemental briefing in light of the *Aragon* decision but the motion was denied. The parties did not dispute at oral argument that the *Aragon* standard is applicable to this case and made their arguments in light of the *Aragon* holding. As a result, we will assume that the *Aragon* standard is applicable to this case.

decision, the term "reasonable purpose" in section 36-6-108(d)(1)(A) was defined in an unpublished court of appeals decision—***Webster v. Webster***—to mean "a significant purpose, substantial when weighed against the gravity of the loss of the non-custodial parent's ability 'to participate fully in their children's lives in a more meaningful way.'" ***Webster v. Webster***, No. W2005-01288-COA-R3-CV, 2006 WL 3008019, at \*14 (Tenn. Ct. App. Oct. 24, 2006), *overruled by* ***Aragon v. Aragon***, 513 S.W.3d 447 (Tenn. 2017). The supreme court's decision in ***Aragon***, however, expressly overruled this definition and held that "[t]he term 'reasonable purpose' should be given its ordinary meaning." ***Aragon***, 513 S.W.3d at 467.

In ***Aragon***, the father, who spent the majority of the residential parenting time with the parties' child, notified the mother of his intent to relocate to Arizona because he received a nursing job offer. ***Id.*** at 450. Father subsequently filed a petition asking the trial court to modify the parenting plan and permit father to relocate. ***Id.*** The petition asserted that the relocation to Arizona was for a reasonable purpose because his new job would provide "the opportunity for greater income over his current options in the state of Tennessee"; father "has an extensive family support system in the Tucson, Arizona area including his parents and several aunts, uncles and cousins"; and the relocation could "provide many opportunities for the minor child to interact with the [f]ather's family that are otherwise unavailable in Tennessee." ***Id.*** Mother opposed the relocation, asserting that the relocation would cause hardship for her in exercising parenting time with the child and that father's proposed relocation would serve "no purpose," was not in the child's best interest, and would "separate the child from her extended family." ***Id.***

After trial, the trial court found that there was "no proof" that father had better career opportunities in Arizona than in Tennessee because Father had not even pursued any nursing jobs in Tennessee. ***Id.*** at 453. The trial court credited mother's testimony that she gave up her equal residential parenting time to work abroad with the understanding that father would look for nursing employment in Tennessee after he finished his nursing education. ***Id.*** The trial court found that father reneged on his promise and decided to move with the child. ***Id.*** Although the trial court acknowledged that father "posits a rational basis for his move," the trial court concluded that the proposed relocation was "not reasonable under all the circumstances." ***Id.***

The father appealed,[7] arguing that the trial court erred in concluding that his requested relocation had no reasonable purpose and that it was in the child's best interest to designate mother as the primary residential parent. The court of appeals in a split opinion affirmed the trial court's judgment under the ***Webster*** standard. ***Aragon v.***

---

[7] Two appeals resulted. In the first appeal, the court of appeals vacated and remanded the case to the trial court because the trial court failed to make specific factual findings regarding the child's best interest. *See* ***Aragon v. Aragon***, No. M2013-01962-COA-R3-CV, 2014 WL 1607350, at \*9 (Tenn. Ct. App. Apr. 21, 2014).

*Aragon*, No. M2014-02292-COA-R3-CV, 2015 WL 7752440, at *3 (Tenn. Ct. App. Nov. 30, 2015), *appeal granted* (Mar. 23, 2016).

Because reasonable purpose is not statutorily defined, the supreme court, after considering the legislative history of the Parental Relocation Statute, came to the following conclusion:

> Specifically, [the legislative history] does not support the *Webster* court's interpretation of "reasonable" as "significant" or "substantial," nor does it support an approach in which the trial court weighs the purpose of the proposed relocation "against the gravity of the loss of the non-custodial parent's ability 'to participate fully in their children's lives in a more meaningful way.'" *Webster*, 2006 WL 3008019, at *14 (quoting *Aaby [v. Strange]*, 924 S.W.2d [623,] 631 [(Tenn. 1996)] (White, J., dissenting)). Rather, the statutory structure and legislative history both indicate **an intent to make relocation cases relatively clear-cut, to permit the parent who has been spending the majority of the residential parenting time with the child to relocate with the child without court intervention, except in unusual cases in which the other parent proves that the move** is vindictive, risks serious harm to the child, or **has no reasonable purpose at all**.
>
> \* \* \*
>
> We note that the *Webster* court's view of the term "reasonable purpose" encourages trial courts to consider evidence that has little to do with the proposed purpose of the move and more to do with the perceived overall fairness of the primary residential parent's decision to relocate or whether the move is in the child's best interest. For example, in the case at bar, the trial court factored into its decision Mother's assertion that, because neither parent could secure employment, she accepted work abroad with the understanding that Father intended to remain in middle Tennessee after he received his nursing education, but after obtaining the benefit of their bargain, Father decided not to seek a nursing job in Tennessee. These facts would be pertinent if the trial court were charged with deciding whether Father's proposed relocation was fair to Mother; it was not, however, tasked with making that determination. The testimony relied upon by the trial court in fact ranges far afield from an evaluation of the **limited question of whether Father's stated purpose for moving to Arizona was reasonable.** The rigid structure of section 36-6-108—in which best interest is reached only if and when the parent opposing the move proves one of the grounds—suggests that **the "reasonable purpose" ground is not intended to be a guise under which the trial court may determine whether the parent's decision to relocate is wise or fair or in the child's best interest.**

Accordingly, we overrule ***Webster v. Webster*** insofar as it interpreted the term "reasonable purpose" in section 36-6-108 to mean "a significant purpose, substantial when weighed against the gravity of the loss of the non-custodial parent's ability to participate fully in their children's lives in a more meaningful way." ***Webster***, 2006 WL 3008019, at *14. The term "reasonable purpose" should be given its ordinary meaning.

***Aragon***, 513 S.W.3d at 466–67 (emphasis added) (footnote omitted). Although the burden has always been on the parent opposing relocation, because of the clarification offered by the ***Aragon*** decision, it is now clear that the proof required to meet this burden is both demanding and limited.

Accordingly, we turn to consider whether Father met his burden to show that Mother's move served no reasonable purpose, as required by our supreme court's recent holding. In this case, in support of its conclusion that the proposed move had no reasonable purpose, the trial court made the following findings:

The [c]ourt will find it believes the real purpose of the move is not to advance [Mother's] career in music—it is to be close to [boyfriend]. The [c]ourt does not believe [Mother] has set forth any effort toward obtaining employment in the Middle Tennessee area. The [c]ourt did not believe what [Mother] said. She has failed to prove she set forth any effort to seek gainful employment in the Middle Tennessee area.

So, in light of the fact [Mother] has failed to do that or failed to establish that she has, the [c]ourt looks at the move from a stand point of its reasonableness. [Mother] is using employment in Houston, Texas, as a basis for the move when she has made no effort to seek employment in the Middle Tennessee area. The [c]ourt finds it is absolutely not reasonable. She has made no effort. Her parents live here, her family lives here, the father of the minor child lives here, and the paternal grandparents and other extended family live in North Alabama. So considering the stated purpose of the move, what the [c]ourt believes is the real purpose of the move and the fact that [Mother] has taken no steps to seek gainful employment in Middle Tennessee, the [c]ourt finds that [Father] has carried his burden of proof in establishing the move does not have a reasonable purpose.

As an initial matter, we note that much like the trial court in ***Aragon***, it appears that the trial court in this case likewise improperly placed the burden of proof on Mother to show a reasonable purpose for the move rather than placing the burden on Father of proving that "[t]he relocation does not have a reasonable purpose." Tenn. Code Ann. § 36-6-108(d)(1)(A). The supreme court in ***Aragon***, however, explicitly rejected as irrelevant evidence of the custodial parent's lack of reasonable efforts in pursuing a job closer to the noncustodial parent because the custodial parent did not have the burden of

proof. Rather, the ***Aragon*** court held that the trial court's focus on the lack of evidence of the custodial parent's efforts to secure employment in Tennessee improperly shifted the burden from the parent opposing relocation. *See **Aragon***, 513 S.W.3d at 463 (noting that the trial court improperly allocated the burden of proof on the father to show a reasonable purpose for the move based on the trial court's comments that there was "no proof . . . that [father] has better job opportunities, greater salary opportunities or career advancement opportunities in [Arizona]" and "no proof whatsoever with regard to [father's] comparable job opportunities in the Middle Tennessee or Southern Kentucky area because he has not . . . pursued such opportunities."); *see also **Redmon v. Redmon***, No. W2013-01017-COA-R3-CV, 2014 WL 1694708, at *6–7 (Tenn. Ct. App. Apr. 29, 2014) (stating that father had not carried his burden of proving lack of a reasonable purpose for mother's proposed move by showing that mother did not look "hard enough" for a job in Tennessee). As such, Mother is not required to present any evidence to "establish" that she diligently pursued job opportunities in Tennessee in order to be allowed to relocate; rather, the burden remains at all times on the parent opposing relocation to show that the move lacks a reasonable purpose. *Cf.* ***Redmon***, 2014 WL 1694708, at *7 (noting that while "comparison of . . . job opportunities" in the current location and the proposed location may be relevant, "the party with the burden of proving lack of reasonable purpose" bears "the onus . . . to produce evidence from which such a comparison could be made"). *But see **Aragon***, 513 S.W.3d at 467 (holding that "the 'reasonable purpose' ground is not intended to be a guise under which the trial court may determine whether the parent's decision to relocate is wise"). Despite the trial court's improper allocation of the burden of proof, however, we will endeavor to determine, based on the record, whether Father nevertheless met his burden of proving that Mother's proposed relocation does not have a reasonable purpose.

Here, Father does not dispute that Mother received a job offer in Texas; rather, Father argues that he met his burden of proof by showing that Mother's proposed move lacks a reasonable purpose. We respectfully disagree.

First, we find it significant that Father's case-in-chief consisted only of Mother's testimony regarding her motivations for moving and Father's testimony. The trial court in its order found that Mother's "testimony is not worthy of belief[,]" "believ[ing] nothing [Mother] said" and "giving no weight to [Mother's] testimony." If we were to take the trial court's order literally, the trial court appeared to have rejected all of Mother's testimony, even the testimony Father relied on in his case-in-chief. As a result, Father is left with only his testimony regarding his current job and relationship status, which spanned a mere seven pages in the trial transcript. Father's sparse testimony, standing alone, is not sufficient to meet his burden of proving by a preponderance of the evidence that Mother's proposed relocation lacked a reasonable purpose.

Even if we were to interpret the trial court's order to mean that the trial court rejected all of Mother's testimony that was favorable to her, such as the fact that she is

moving to Texas for a job offer, we are confronted with the trial court's additional finding that it "believe[d] the testimony of Mr. Kelley," who testified that he was interested in Mother's ability to teach kindermusik and offered Mother an administrative assistant job until she became completely booked with students at his music studio in Texas. We note that, even if Mother worked as an administrative assistant until she could eventually teach, her salary as an administrative assistant would net approximately $1,500.00 per month, which is more than what she is currently making in Tennessee.[8] Father has presented no proof, other than Mother's lack of reasonable efforts to find a job in the Middle Tennessee area, to show that Mother "has no reasonable purpose at all" to move. *Aragon*, 513 S.W.3d at 466.

Father argues, however, that the evidence does not preponderate against the trial court's finding that Mother's main purpose for relocating is to be closer to her boyfriend. From our review of the *Aragon* decision, our inquiry is far more limited than ascertaining the reasonableness of any and all of the custodial parent's purposes in relocating. Rather, the *Aragon* Court directed that courts consider only "the limited question of whether [the relocating parent's] **stated** purpose for moving . . . was reasonable." *Aragon*, 513 S.W.3d at 467 (emphasis added). As we perceive it, the *Aragon* decision appears to have contemplated the situation where a relocating parent may have multiple reasons for moving, but, as long as there is at least one validly stated purpose for moving, the relocating parent must be allowed to move with the child. *See Aragon*, 513 S.W.3d at 466 ("[T]he parent who has been spending the majority of the residential parenting time with the child [should be permitted] to relocate with the child without court intervention, except in unusual cases in which the other parent proves that the move is vindictive, risks serious harm to the child, or has no reasonable purpose **at all**.") (emphasis added). Here, Mother's motivation for moving may very well be that she wants to be closer to her boyfriend. Mother's stated purpose, however, is to accept a job offer that allows her increased income, as well as the opportunity to work in her chosen field. The evidence shows that, giving credence to Mr. Kelley's testimony, Mother has been offered a job in Texas that could lead to a full-time teaching job in Mother's chosen profession, and Father has simply not shown that Mother's decision to move to pursue better employment is unreasonable. Father's reliance on Mother's purported ulterior motive and lack of reasonable efforts is not enough to meet his burden of proving that there is no reasonable purpose **at all** for Mother's proposed relocation. Rather, we conclude that, even considering the trial court's credibility finding against Mother, Father has failed to present evidence that Mother's move lacked a reasonable purpose, i.e., that Mother's "stated purpose for moving . . . was [not] reasonable." *Aragon*, 513 S.W.3d at 467. As a

---

[8] Although Mother testified that her annual salary never exceeded $10,000.00 per year, which would make her current salary $833.33 per month, Father, in the body of his brief, calculated Mother's actual monthly salary to be $1,200.00 based on the specifics of Mother's testimony regarding each of her clients. Father does not dispute that Mother's monthly salary in Texas would be more than her current salary in Tennessee; rather, he maintains that it is "not a significant increase."

result of Father's failure to establish a ground for denying Mother permission to relocate, Mother, pursuant to statute, must be permitted to move.

We are mindful that the current standard under Tennessee law places a much more substantial burden on the parent opposing the relocation than before because it is difficult, if not impossible, to prove a negative. *See Alcazar v. Hayes*, 982 S.W.2d 845, 854 (Tenn. 1998) (quoting *Jones v. Bituminous Cas. Corp.*, 821 S.W.2d 798, 803 (Ky. 1991)) ("[I]t is virtually impossible to prove a negative[.]"); *Kirby v. State*, No. 03C01-9303-CR-00074, 1994 WL 525086, at *4 (Tenn. Crim. App. Sept. 28, 1994) ("[C]ourts are reminded that it is notoriously difficult to prove a negative."). Regardless of our concerns about this standard, however, we are not free to depart from the Tennessee Supreme Court's unequivocal holding. "The Court of Appeals has no authority to overrule or modify Supreme Court's opinions." *Bloodworth v. Stuart*, 428 S.W.2d 786, 789 (Tenn. 1968) (citing *City of Memphis v. Over*ton, 392 S.W.2d 86 (Tenn. 1964)); *Barger v. Brock*, 535 S.W.2d 337, 341 (Tenn. 1976). As such, "[o]nce the Tennessee Supreme Court has addressed an issue, its decision regarding that issue is binding on the lower courts." *Morris v. Grusin*, No. W2009-00033-COA-R3-CV, 2009 WL 4931324, at *4 (Tenn. Ct. App. Dec. 22, 2009) (quoting *Davis v. Davis*, No. M2003-02312-COA-R3-CV, 2004 WL 2296507, at *6 (Tenn. Ct. App. Oct. 12, 2004)); *see also Thompson v. State*, 958 S.W.2d 156, 173 (Tenn. Crim. App. 1997) ("[I]t is a controlling principle that inferior courts must abide the orders, decrees and precedents of higher courts. The slightest deviation from this rigid rule would disrupt and destroy the sanctity of the judicial process.") (quoting *State v. Irick*, 906 S.W.2d 440, 443 (Tenn. 1995)); *Levitan v. Banniza*, 236 S.W.2d 90, 95 (Tenn. Ct. App. 1950) ("This court is bound by the decisions of the Supreme Court.").

## CONCLUSION

Based on the foregoing, we reverse the trial court's denial of permission for Mother to relocate to Texas with the child, and this cause is remanded to the trial court for the entry of an order allowing Mother to relocate with the child, as well as all further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are taxed to the Appellee, Ronald Stringer, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE