IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 18, 2019 Session

## LINDA L. ROZEN ET AL. v. WOLFF ARDIS, P.C.

**Appeal from the Circuit Court for Shelby County**
**No. CT-003797-16      Valerie L. Smith, Judge**

_____

**No. W2019-00396-COA-R3-CV**

_____

Appellants filed a legal malpractice action against their former law firm after two civil judgments were not renewed after a ten-year period. After a bench trial, the trial court ruled that the appellants' claim was filed beyond the statute of limitations. The trial court also found that no attorney-client relationship existed to impose a duty on the law firm to renew the civil judgments before they expired. We find no reversible error in the trial court's ruling regarding the statute of limitations. As such, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which KENNY ARMSTRONG and CARMA DENNIS MCGEE, JJ., joined.

R. Sadler Bailey and J. Vance Montgomery, Memphis, Tennessee, for the appellants, Linda L. Rozen, and Doron Rozen.

Russell E. Reviere and Dale Conder, Jr., Jackson, Tennessee, for the appellee, Wolff Ardis, P. C.

## OPINION

### I.      BACKGROUND

This case involves a claim of legal malpractice following the failure to renew two civil judgments ten years after they were first issued. Appellants Doron Rozen and Linda L. Rozen ("the Rozens") hired a law firm, Appellee Wolff Ardis, P.C. ("Wolff Ardis"), after they discovered that an employee, Jessica Trotter-Lawson ("Ms. Trotter"), and her then-boyfriend, Andrew Burton ("Mr. Sheriff")[1], had embezzled hundreds of thousands

_____

[1] Andrew Sheriff's name was changed to Andrew Burton after an order allowing the change was

of dollars from the Rozens' jewelry business in Memphis. The Rozens signed an engagement agreement with Wolff Ardis on January 8, 2003. The agreement stated that Wolff Ardis would represent the Rozens and their business, Town & Country Jewelers, Inc., "in the investigation, pursuit, and if appropriate, prosecution of any claim and/or lawsuit arising out of the activities of [Ms. Trotter] and/or [Mr. Sheriff]."

The Rozens sought civil judgments against Ms. Trotter and Mr. Sheriff. The Shelby County Chancery Court issued a $493,685.81 judgment against Ms. Trotter on April 23, 2003, and a $519,357.47 judgment against Mr. Sheriff on August 11, 2003. When each civil judgment was issued, the Rozens were represented by Sharon Petty ("Ms. Petty"), who then worked as an attorney at Wolff Ardis. Pursuant to Tennessee Code Annotated section 28-3-110(a)(2), civil judgments are effective for ten years; judgments may, however, be renewed by the filing of a timely petition. Ms. Trotter and Mr. Sheriff separately pleaded guilty to two counts of theft over $60,000 on January 13, 2004, and were each sentenced to a maximum of eight years in prison. Because Ms. Trotter and Mr. Sheriff had no demonstrable assets and would be incarcerated for some time, Wolff Ardis encouraged the Rozens to wait to collect on the judgments until both people had collectable income or assets. The Rozens were willing to wait and pursue their judgments against Ms. Trotter and Mr. Sheriff as long as necessary. Both Ms. Trotter and Mr. Sheriff were eventually released on probation.

Wolff Ardis represented the Rozens again in 2006 to ensure that the Rozens' judgment against Mr. Sheriff was not discharged after he was released from prison and filed for bankruptcy. The bankruptcy court entered an order on May 8, 2008, that declared that the Rozens' judgment could not be discharged. On May 20, 2008, the Rozens received a letter from Wolff Ardis stating that "this matter is completed" and requesting that the Rozens pay for the legal services performed for them.

In the years after obtaining the judgments and the conclusion of bankruptcy matter, Mr. Rozen continued to contact Wolff Ardis about renewing the judgments before they expired.[2] Typically, Mr. Rozen would discuss the judgments with Wolff Ardis staff, including paralegal Cindy Tupis ("Ms. Tupis") and legal assistant Cynthia Dayne ("Ms. Dayne").[3] After one such conversation, Ms. Dayne sent an email to Mr. Rozen on June 29, 2011, stating in part:

> It appears that the Order Granting Default Judgment against Jessica Trotter
> was in April of 2003 and the Order Granting Default Judgment against

---

issued by Shelby County Circuit Court on October 20, 2007. He will be referred to as Mr. Sheriff in the remainder of the opinion.

[2] While Mr. and Ms. Rozen are separate appellants in this matter, the record indicates that Mr. Rozen acted on behalf of himself and Ms. Rozen in the events leading up to the present lawsuit.

[3] Cynthia Dayne's name was changed to Cynthia Vaughn after she remarried. For purposes of this opinion, we will describe her as Ms. Dayne.

Andy Sheriff was in June of 2003. Judgments have to be renewed in 10 years, so in 2013 we will have to renew.

We will docket a reminder for this in our system for January of 2013.

I am copying Sharon Petty on this email – Sharon please confirm that I am correct.

Calendar reminders were directed to Ms. Dayne and Ms. Petty about renewing the Rozens' judgments. Unbeknownst to Ms. Dayne at the time, those reminders were never received due to technical issues. Neither Ms. Dayne nor Ms. Petty worked for Wolff Ardis when the present lawsuit was filed. At trial, the parties stipulated that Ms. Petty would testify that she never received the calendar invite. Mr. Rozen continued to contact Wolff Ardis regarding the judgments, including in 2012 after Ms. Trotter was accused of stealing from a church in Johnson City.[4]

The 2013 renewal dates on both judgments passed without intervention from either the Rozens or Wolff Ardis. Specifically, Wolff Ardis did not work to renew the judgments and did not issue a bill to the Rozens during that time. The Rozens contacted Wolff Ardis again about the judgments in June 2016, when Mr. Rozen asked the law firm to send him case files and complete a background check on Mr. Sheriff. At that time, Mr. Rozen indicated his belief that the judgments had been renewed. While conducting the background check, Ms. Tupis learned the judgments against Ms. Trotter and Mr. Sheriff were never renewed and arguably invalid. Ms. Tupis told her supervisor, Patrick M. Ardis ("Mr. Ardis"), about the expired judgments. Mr. Ardis told Ms. Tupis that they should try to help the Rozens if they could. Without approval from the Rozens, Wolff Ardis filed Motions and Requests for Scire Facias to Revive Judgments against Ms. Trotter and Mr. Sheriff on June 20, 2016. Ms. Tupis completed the background check and emailed Mr. Rozen about the results on June 21, 2016. Ms. Tupis and Mr. Ardis unsuccessfully attempted to contact the Rozens personally and alert them of the judgments. Ms. Tupis eventually emailed Mr. Rozen on July 28, 2016 to inform him of the expired judgments and the motions that had been filed to revive them. After a hearing on August 15, 2016, the Motions and Requests for Scire Facias to Revive Judgments were denied by the Shelby County Chancery Court. Mr. Ardis sent a letter to the Rozens on August 17, 2016 informing them of the expired judgments, the failed efforts to revive them, and the law firm's plans to appeal the rulings at its own expense.[5]

---

[4] Ms. Trotter was indicted in September 2011 after she was accused of stealing money from a church where she worked in Johnson City. *See generally* **State v. Tramel**, No. E2015-00694-CCA-R3-CD, 2016 WL 3570371 at *1 (Tenn. Ct. Crim. App. Oct. 20, 2016). When she was convicted in 2014, a Washington County court ordered Ms. Trotter to pay restitution to the church upon her release. *Id.*

[5] The Shelby County Chancery Court's denial of the motions to renew the judgments was affirmed in separate judgments from this Court. *See* **Town & Country Jewelers, Inc. v. Sheriff**, 2018 WL 2979792, W2017-0175-COA-R3-CV (Tenn. Ct. App. June 13, 2018); **Town & Country Jewelers, Inc. v.**

The Rozens, along with Town & Country Jewelers, Inc., filed the present legal malpractice action against Wolff Ardis in Shelby County Circuit Court ("the trial court") on September 15, 2016.[6] Wolff Ardis answered the complaint with multiple affirmative defenses on November 1, 2016, including expiration of the legal malpractice statute of limitations. Wolff Ardis moved for summary judgment on April 27, 2017, and the Rozens separately moved for summary judgment on May 30, 2017. The trial court was also asked whether Wolff Ardis could present evidence about the collectability of the judgments as part of its defense. The trial court denied both motions for summary judgment and additionally allowed Wolff Ardis to present evidence at trial regarding collectability. The Rozens moved for an interlocutory appeal on the collectability issue on November 22, 2017. The trial court granted the motion for an interlocutory appeal, but the Rozens' request was denied on January 8, 2018.

A bench trial was held on November 13 and November 19, 2018. At trial, the Rozens asserted that Wolff Ardis maintained an attorney-client relationship with them after the judgments were issued and that the law firm was liable for failing to renew those judgments. Further, the Rozens contended that they only learned of the malpractice when Mr. Ardis sent them a letter informing them of the failure to renew the judgments in August 2016. However, Wolff Ardis argued that no attorney-client relationship existed to require the law firm to renew the judgments and that it never agreed to renew them. Further, Wolff Ardis argued that the judgments were not collectible. Finally, Wolff Ardis contended that the Rozens' claim was barred by the applicable one-year statute of limitations, as the Rozens should have discovered any potential malpractice more than a year before they filed their lawsuit.

At trial, Mr. Rozen testified that he believed that Wolff Ardis committed to renewing the judgments when Ms. Dayne sent an email to that effect in June 2011. Further, Mr. Rozen denied that he saw a 2008 letter from Wolff Ardis stating that its representation in the Sheriff bankruptcy matter had concluded. Mr. Rozen also testified that he did not consistently receive regular, monthly statements from Wolff Ardis after they worked on his and his wife's behalf. He considered the law firm to be disorganized, which is why he continued to remind staff at Wolff Ardis about the judgments. He further believed that he and his wife were not always charged when the firm performed legal services for them. However, Mr. Rozen said in his deposition that he did not expect Wolff Ardis to renew the judgments at no charge.

In response, Mr. Ardis testified at trial that he had two conversations with Mr. Rozen about not renewing the judgments after they were issued in 2003. In 2004, Mr. Ardis said he told Mr. Rozen that Wolff Ardis would not renew the judgments during a

---

*Trotter*, 538 S.W.3d 508 (Tenn. Ct. App. 2017), *perm. app. denied* (Tenn. Nov. 21, 2017).

[6] Town & Country Jewelers, Inc. was voluntarily dismissed as a party before the present case was tried or appealed.

- 4 -

heated conversation about unpaid bills. Mr. Rozen denied that this conversation ever occurred. During deposition testimony admitted as substantive evidence at trial, Ms. Tupis recalled the heated conversation but did not know its contents. Mr. Ardis also testified that a second conversation occurred in July 2011 weeks after Ms. Dayne sent the email to Mr. Rozen allegedly committing to renewing the judgments. During the meeting, the topic of the judgments came up. Mr. Ardis stated that Mr. Rozen could contact any attorney he wanted to renew the judgments and that Wolff Ardis could renew the judgments if Mr. Rozen paid the law firm upfront. At that point, Mr. Rozen took Mr. Ardis to his office to show him a "sticky" note that reminded him to call Mr. Ardis about the judgments in 2013. A subsequent, but unrelated, letter from Mr. Rozen confirmed the meeting, which was initiated when Mr. Ardis sought Mr. Rozen's appraisal for stolen jewelry. During his testimony, Mr. Rozen confirmed the existence of the sticky note but did not testify about the July 2011 meeting.

The trial court ruled in favor of Wolff Ardis in an order filed on February 7, 2019. In particular, the trial court found that the Rozens failed to establish the existence of an attorney-client relationship and that the Rozens filed their lawsuit more than one year after they either knew or should have known that Wolff Ardis had not renewed the judgments. The issue of collectability was considered moot by the trial court in light of its rulings on the statute of limitations and the attorney-client relationship.

The trial court's rulings were rooted in its findings of fact and determinations of credibility. In particular, the trial court deemed parts of Mr. Rozen's testimony not credible, including his denial of his alleged conversation with Mr. Ardis in 2004. The court found that sticky note reminding Mr. Rozen to call Mr. Ardis credibly existed and that a reasonable person could not then rely upon a conversation and an email from a non-lawyer to establish an attorney-client relationship. Further, Mr. Rozen's testimony that he believed the attorney-client relationship was established by a call to a legal secretary was not credible. Finally, the trial court found that Mr. Rozen received a letter from Wolff Ardis concluding its representation of the Sheriff bankruptcy matter and received no bills after Ms. Dayne's email about renewing the judgments. Because of this, the trial court found that a reasonable person that received bills from a law firm in the past would expect to receive them again for future work. In contrast, the trial court found Mr. Ardis's testimony to be "wholly credible" and determined that: 1) Mr. Ardis and Mr. Rozen had a conversation where Mr. Rozen was told that Wolff Ardis would not renew the judgments; 2) that the Wolff Ardis letter dated May 20, 2008 concluded the relationship between Wolff Ardis and the Rozens regarding the Sheriff bankruptcy matter; 3) Mr. Ardis and Mr. Rozen had a second conversation in July 2011 where Mr. Ardis told Mr. Rozen that he could contact any attorney he wanted to renew the judgments; and 4) Mr. Ardis did not give Wolff Ardis's staff the authority to create an attorney-client relationship.

Following the trial court's order, Wolff Ardis moved for $7,789.85 in discretionary costs. The trial court signed a consent order granting the discretionary costs on February 27, 2019. The Rozens timely filed an appeal to this Court.

## II.   ISSUES PRESENTED

As Appellants, the Rozens present the following issues for review:

1.      Whether the trial court erred when it ruled that this legal malpractice case was filed after the expiration of the statute of limitations.
2.      Whether the trial court erred in finding that Wolff Ardis, P.C., had no duty to renew the underlying judgments for Appellants.

## III.   DISCUSSION

We begin with the Rozens' argument that the trial court erred in finding that their legal malpractice complaint was filed after the expiration of the applicable statute of limitations. The statute of limitations for legal malpractice is one year from when a cause of action accrued. Tenn. Code Ann. § 28-3-104(a)(1). The discovery rule is applied to determine when a cause of action accrues. *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998). As our Supreme Court has previously explained, a cause of action accrues when: 1) the plaintiff suffers legally cognizable damage or actual injury because of the defendants' negligence, and 2) the plaintiff knows or should have known through the exercise of reasonable diligence that the injury occurred because of the defendant's negligence or wrongful conduct. *Kohl*, 977 S.W.2d at 532; *Carvell v. Bottoms*, 900 S.W.2d 23, 28–30 (Tenn. 1995).

An actual injury occurs when a party loses "a legal right, remedy or interest, or the imposition of liability." *Kohl*, 977 S.W.2d at 532 (quoting *LaMure v. Peters*, 924 P.2d 1379, 1382 (N.M. 1996)). Actual injury can also occur when a plaintiff is forced to take action or suffers an inconvenience because of the defendant's negligence or wrongful conduct. *Kohl*, 977 S.W.2d at 532. Here, no party disputes that the Rozens lost the legal right to pursue judgments against Ms. Trotter and Mr. Sheriff when those judgments expired in 2013. The Rozens appear to concede that the loss of the ability to collect on the judgments constitutes an actual injury for purposes of the discovery rule.

The central dispute in this case, instead, involves the knowledge prong. The knowledge element of the discovery rule can be satisfied when a party has actual or constructive knowledge of an injury. *Carvell*, 900 S.W.2d at 29. As our Supreme Court has explained,

> [T]he statute of limitations begins to run when the plaintiff has actual knowledge of the injury as where, for example, the defendant admits to

having committed malpractice or the plaintiff is informed by another attorney of the malpractice. Under the theory of constructive knowledge, however, the statute may begin to run at an earlier date—whenever the plaintiff becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct. [*Carvell*, 900 S.W.2d at 29]. We have stressed, however, that there is no requirement that the plaintiff actually know the specific type of legal claim he or she has, or that the injury constituted a breach of the appropriate legal standard. ***Shadrick [v. Coker]***, 963 S.W.2d [726, 733 (Tenn. 1998)]. Rather, "the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." *Carvell,* 900 S.W.2d at 29 (quoting ***Roe v. Jefferson***, 875 S.W.2d 653, 657 (Tenn.1994)). "It is knowledge of facts sufficient to put a plaintiff on notice that an injury has been sustained which is crucial." ***Stanbury [v. Bacardi]***, 953 S.W.2d [671, 678 (Tenn. 1997)].

***Kohl***, 977 S.W.2d at 532–33. Thus, plaintiffs cannot wait to file a malpractice claim until they know "all of the injurious effects as consequences of an actionable wrong." ***Chambers v. Dillow***, 713 S.W.2d 896, 898 (Tenn. 1986) (citing ***Security Bank and Trust Co. v. Fabricating Inc.***, 673 S.W.2d 860 (Tenn. 1983); ***Taylor v. Clayton Mobile Homes Inc.***, 516 S.W.2d 72 (Tenn. 1974)).

The Rozens argue that they received notice of the alleged malpractice only after receiving an email informing them of the expired judgments from Wolff Ardis on June 28, 2016. The email was sent less than a year before the Rozens filed their malpractice complaint. Wolff Ardis contends that the evidence supports the trial court's finding that the Rozens should have reasonably known that the judgments were not renewed when they never received a bill from the law firm in the months following the renewal deadline.

Few legal malpractice cases revolving around the expiration of the statute of limitations were decided after a bench trial where a judge made findings of fact and conclusions of law. *But see* ***Credential Leasing Corp. of Tenn., Inc. v White***, No. E2015-01129-COA-R3-CV, 2016 WL 2937094 at *4–7 (Tenn. Ct. App. May 17, 2016) (where findings of fact and conclusions of law from a bench trial were applied in a Tennessee Consumer Protection Act claim against an attorney). When an appeal involves a bench trial, we review the trial court's findings of fact de novo and with a presumption of correctness. Tenn. R. App. P. 13(d). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." ***Nw. Tennessee Motorsports Park, LLC v. Tennessee Asphalt Co.***, 410 S.W.3d 810, 816 (Tenn. Ct. App. 2011) (citing ***Walker v. Sidney Gilreath & Assocs.***, 40 S.W.3d

66, 71 (Tenn. Ct. App. 2000)). The burden is therefore on the Rozens to show that the evidence preponderates against the trial court's findings. *See Waller v. Thomas*, 545 S.W.2d 745, 749 (Tenn. Ct. App. 1976) (quoting **Roberts v. Ray**, 45 Tenn. App. 280, 285, 322 S.W.2d 435, 438 (Tenn. Ct. App. 1958) ("[T]he burden is on defendant-appellant to show that the evidence does preponderate against [the trial court's judgment])). Findings that rest on a trial court's credibility determinations, however, are given even greater deference than other factual findings. *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 425 (Tenn. Ct. App. 2005). Appellate courts will not re-evaluate a trial court's assessment of witness credibility without clear and convincing evidence. *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from evidence[,]" and "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004) (citations omitted). We review the trial court's findings of law *de novo* with no accompanying presumption of correctness. *Johnson v. Johnson*, 37 S.W.3d 892, 894 (Tenn. 2001).

In the present case, the trial court made various factual findings, including findings rooted in the credibility of witnesses. In particular, the trial court found that two meetings occurred between Mr. Rozen and Mr. Ardis where the topic of representation arose. The first conversation, which occurred in 2004, was considered a heated discussion where Mr. Ardis advised Mr. Rozen that Wolff Ardis would not renew the judgments for the Rozens. While Mr. Rozen denied that this conversation took place, the trial court determined that his testimony was not credible and that the conversation occurred. A second conversation took place in July 2011, when Mr. Ardis told Mr. Rozen that he could contact any attorney he wanted to renew the judgments. During that conversation, the trial court found that Mr. Rozen showed Mr. Ardis a sticky note on his calendar which reminded him to call Mr. Ardis to renew the judgments by 2013. Further, the trial court found Mr. Rozen's testimony that he believed that an attorney-client relationship could be established through a call and email to a legal assistant to not be credible. The trial court also determined that Mr. Rozen received regular billing statements when he was previously represented by Wolff Ardis.

Upon review, the evidence does not preponderate against the trial court's findings as to these meetings and their contents. Two witnesses, Mr. Ardis and Ms. Tupis, testified that Mr. Ardis and Mr. Rozen had a heated discussion at the Wolff Ardis offices in 2004. Also, Mr. Ardis testified that he told Mr. Rozen that the law firm would not renew the judgments on the Rozens' behalf. While Mr. Rozen denied that this conversation took place, the trial court did not find his testimony about the conversation to be credible. Further, no evidence supports Mr. Rozen's claims beyond his own testimony. Based on the witnesses' testimony and the trial court's credibility findings of Mr. Rozen, we cannot conclude that the evidence preponderates against the trial court's finding that the 2004

conversation between Mr. Ardis and Mr. Rozen took place and that Mr. Ardis informed Mr. Rozen during that meeting that Wolff Ardis's representation would not extend to renewing the judgments.[7]

The second meeting on this topic occurred in July 2011, following the conclusion of the bankruptcy representation. According to testimony at trial, Mr. Ardis and Mr. Rozen met in July 2011 to discuss the appraisal of jewelry stolen from Mr. Ardis's home. During the meeting, Mr. Ardis testified that he told the Rozens that they could "hire any law firm in town" to renew the judgments or hire Wolff Ardis again if they paid the law firm upfront. Mr. Ardis also testified that Mr. Rozen showed him a sticky note during this meeting; the note was intended to remind Mr. Rozen to call Mr. Ardis by 2013 to have the judgment renewed.

The trial court credited Mr. Ardis's testimony about this meeting and the evidence does not preponderate against the trial court's findings. As an initial matter, while counsel for the Rozens appeared to contest the existence of this meeting at oral argument, importantly, Mr. Rozen did not expressly deny that the meeting occurred in his testimony; rather, he only more generally denied that he was put on notice for purposes of the statute of limitations until 2016. Regardless, we give great weight to factual findings that rest on credibility and will not overturn these findings absent clear and convincing evidence to the contrary. *In re M.L.D.*, 182 S.W.3d 890, 897 (Tenn. Ct. App. 2005) (citing *Sullivan v. Sullivan*, 107 S.W.3d 507, 510 (Tenn. Ct. App. 2002)) ("Insofar as the trial court's findings are based on witness credibility, we give great deference to the trial court's findings and will not disturb those findings absent clear and convincing evidence to the contrary."). From our review of the record, clear and convincing evidence was simply not presented, nor pointed to on appeal, to undermine the trial court's findings as to this issue.

Rather than actually pointing to clear and convincing evidence sufficient to disturb the trial court's findings, at oral argument, the Rozens' counsel took issue with the deference applied to credibility findings as being, in effect, an insurmountable obstacle. Respectfully, while the party seeking to reverse a trial court's decision resting on credibility undertakes a heavy burden, the burden is not insurmountable. *See Williams v. City of Burns*, 465 S.W.3d 96, 120 (Tenn. 2015) (holding that the trial court erred in spite of its credibility findings); *Stringer v. Stringer*, 544 S.W.3d 714, 720 (Tenn. Ct. App. 2017) (same). Regardless, we are not at liberty to depart from the rules handed

---

[7] Nevertheless, Mr. Rozen contends that the representation did not end in 2004, as Wolff Ardis continued to represent the Rozens when Mr. Sheriff filed for bankruptcy in 2008. While this representation did occur, the record also reflects the limited scope of Wolff Ardis's work. In fact, this representation was expressly concluded by a letter in May 2008. Though Mr. Rozen denied that he ever read this letter, the trial court found that he had received it. Thus, this evidence does not undermine the trial court's conclusion that Mr. Rozen was informed in 2004 that Wolff Ardis did not intend to renew the judgments simply based on the fact that Wolff Ardis had obtained the judgments in favor of the Rozens.

down by the Tennessee Supreme Court. See ***O'Dneal v. Baptist Mem'l Hosp.-Tipton***, 556 S.W.3d 759, 772 (Tenn. Ct. App. 2018), *perm. app. denied* (Tenn. July 19, 2018) ("[I]ntermediate courts are not free to depart from the Tennessee Supreme Court's unequivocal holdings."); *see also, e.g.,* ***Wells v. Tennessee Bd. of Regents***, 9 S.W.3d 779, 783 (Tenn. 1999) (enshrining the rule that clear and convincing evidence is required to overturn a trial court's assessment of witness credibility). Finally, we conclude that even setting aside the trial court's credibility findings, the weight of the evidence supports the trial court's determination that this meeting occurred and that Mr. Rozen was at that time informed of his need to take affirmative action to renew the judgments. For example, Mr. Rozen does not dispute Mr. Ardis's testimony concerning the existence of the sticky note. According to Mr. Ardis, he learned of the note during the July 2011 meeting. Mr. Rozen did not present any alternative circumstances in which Mr. Ardis could have gained knowledge of his method for reminding himself of the judgment. Documentary proof also supports a finding that this meeting took place. Specifically, the record contains a letter, not disputed by Mr. Rozen, showing that a meeting between the two men occurred in July 2011. The letter, however, does not expressly state that the judgments were discussed, as the letter concerned an unrelated matter. Of course, Mr. Ardis's knowledge of the sticky note suggests that the judgments were indeed discussed at some meeting between the men; without some other suggestion of when Mr. Ardis learned of the sticky note, the trial court did not err in concluding that Mr. Ardis's knowledge resulted from this meeting.

Further, the billing statements provided by Wolff Ardis indicate that the Rozens received regular statements when they owed money to the law firm. Importantly, none of the bills in the record indicate that work was billed over a year after it was completed. While Mr. Rozen said the Rozens were not billed consistently when Wolff Ardis worked on their behalf, he also expressed in his deposition that he expected to be charged by the law firm for any work renewing the judgments. The Rozens' previous statements from Wolff Ardis, combined with an expectation that they would be billed again when the judgments were renewed, support the trial court's finding that the Rozens received regular statements and could have expected to receive similar ones if the judgments were renewed.

In sum, the evidence presented in the record on appeal supports the trial court's findings that Mr. Rozen and Mr. Ardis discussed the judgments in 2004 and again in 2011. During these meetings, Mr. Ardis made clear that Wolff Ardis would not automatically renew the judgments for the Rozens. Mr. Rozen was also aware that the judgments were to expire by operation of law in 2013. As such, Mr. Rozen used a sticky note to remind him to call Mr. Ardis about the judgments in 2013. The record also supports that the Rozens consistently received billing statements from Wolff Ardis and that they could reasonably expect to receive them if the law firm did work for them in the future.

Consequently, the question becomes whether these facts were sufficient to put the Rozens on notice of their injuries caused by the alleged legal malpractice. As previously discussed, a party has constructive knowledge of legal malpractice "whenever the plaintiff becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct." *Kohl*, 977 S.W.2d at 522–23 (citing *Carvell*, 900 S.W.2d at 29). Based on the facts presented, we conclude that the Rozens had constructive knowledge of the injury that would result if the judgments were not renewed more than one year before they filed their lawsuit.

To become aware of facts that would place a reasonable person on notice of the injury stemming from malpractice, a client does not have to be aware of the malpractice itself, but instead of the facts that could lead him or her to discover that an injury had occurred. *See, e.g., Hartman v. Rogers*, 174 S.W.3d 170, 174 (Tenn. Ct. App. 2004) (holding that a client had notice of past malpractice when he was shown a document that indicated false testimony and that the client had "actual knowledge" of the document when it was drafted); *Cavalier Metal Corp. v. Finch & McBroom*, No. W2004-05136-COA-R3-CV, 2005 WL 645201 at *6–8 (Tenn. Ct. App. Mar. 17, 2005) (holding that knowledge of the facts of an injury were established by letters that a client sent to his attorney); *Hodge v. Edwards*, No 03A01-9712-CV-00558, 1999 WL 894105 at *4 (Tenn. Ct. App. Oct. 18, 1999) (holding that a client gained knowledge of an injury when he received medical documents that his previous lawyer had not sought). Knowledge of those facts can be sufficient to put a client on notice and start the clock for purposes of the statute of limitations.

A similar issue was addressed in *Cavalier Metal Corp. v. Finch & McBroom*. In that case, a client filed a legal malpractice lawsuit against its attorneys, alleging, i*nter alia*, the attorneys improperly voluntarily dismissed a defendant from its lawsuit, resulting in prejudice to their case. *Cavalier Metal Corp.*, 2005 WL 645201, at *1–2. The defendant law firm filed a motion to dismiss on the basis of the expiration of the statute of limitations. The trial court dismissed the case. The Court of Appeals affirmed. On appeal, the plaintiff asserted that it did not have notice of its injury until September 2000 when the trial court in the previous case struck a claim for punitive damages that related to the conduct of the nonsuited party. The Court of Appeals noted, however, that the client's president wrote two letters in July 2000 to his attorney "that reveal that [the client] was closely directing the legal strategy . . . and was fully aware of the actions his attorneys had taken up to this point." *Id.* at *6. According to the court, these letters written by the client's president indicated that that the client was "deeply involved in formulating the legal strategy for the litigation," and therefore the client was "fully aware" of the implications of the nonsuit. *Id.* at *5. Thus, the court held that the client "cannot be deemed to have discovered the damages from the attorneys' alleged malpractice only later." *Id.*

- 11 -

A similar result occurred in ***Hartman v. Rogers***, where a client sued for legal malpractice after his attorneys failed to cross-examine the client's then-spouse about a deed of trust in a divorce case and improperly drafted a subsequent deed of trust. ***Hartman***, 174 S.W.3d at 172. The client had knowledge of the deed of trust when it was executed in 1993 but claimed to have "forgotten" about it until his attorneys brought it to his attention. ***Id.*** The client submitted that his injury did not occur until he understood that he had no legal recourse against his wife in the matter. ***Id.*** at 173. In affirming the dismissal of the complaint, we held that the client gained knowledge of his injury when he learned of the implications of the deed and that his wife had falsely testified about it. ***Id.*** at 174. Further, we noted that the client had "actual knowledge" of the deed of trust when it was executed. ***Id.*** at 174. Thus, Tennessee caselaw indicates that knowledge may be found where a client is intimately involved with the legal representation. Moreover, facts known to the client even before the alleged malpractice occurred may be considered as part of the totality of the circumstances in determining the client's knowledge of his or her injury.

Similar to the above cases, we conclude that the constellation of facts shows that the Rozens should have known of their injury more than a year prior to the date they filed suit. *Cf.* ***Doe v. Diocese of Lansing***, No. 262274, 2005 WL 3050651, at \*6 (Mich. Ct. App. Nov. 15, 2005) (holding that a plaintiff's claim was barred by the applicable statute of limitations because "[t]he 'entire constellation of facts' were either known or should have been known to plaintiff" well before the filing of the lawsuit). Here, the trial court was not required to find that the Rozens had actual knowledge of their cause of action more than one year prior to filing suit. Rather, the trial court was required to determine if the Rozens had "information sufficient to alert a reasonable person of the need to investigate the injury." ***Woodruff by & through Cockrell v. Walker***, 542 S.W.3d 486, 495 (Tenn. Ct. App. 2017), *perm. app. denied* (Tenn. Oct. 6, 2017) (citing ***Sherrill v. Souder***, 325 S.W.3d 584, 594 n.7 (Tenn. 2010)). Thus, the plaintiff must exercise reasonable care and diligence in discovering the injury or wrongful conduct. ***Id.*** (citing ***Sherrill***, 325 S.W.3d at 594 n.7).

By the time the injury occurred in 2013, the Rozens were aware that the judgments would expire in 2013 if no affirmative intervention was taken to renew them. Thus, as in ***Hartman***, the Rozens knew about the judgments and the legal implications that would occur if they were not renewed. *See* ***Hartman***, 174 S.W.3d at 172. Based on the reminder note created by Mr. Rozen, the Rozens were also aware that they intended to retain counsel, either Wolff Ardis or independent counsel, in order to renew the judgments in timely fashion. Indeed, Mr. Rozen was so concerned with renewal of the judgments that he frequently contacted Wolff Ardis to inquire about them. Mr. Rozen was therefore intimately involved in the work of maintaining the judgments, much like the client in ***Cavalier***. *See* 2005 WL 645201, at \*6. However, Mr. Rozen admittedly took no action whatsoever in 2013 or in the years immediately following. And then, although the Rozens were regularly billed when Wolff Ardis did work for them and expected to be

- 12 -

billed for the renewal of the judgments, no bill was forthcoming following the expiration of the judgments.

Despite this knowledge, once the date for expiration of the judgments passed, the Rozens did not make any effort to investigate whether their judgments had in fact been renewed. Moreover, even over a year later, when Wolff Ardis had still not billed for the work as the Rozens anticipated, the Rozens still took no action to investigate the judgments. The Rozens' knowledge of the expiration of judgments and the need for affirmative action, coupled with the lack of billing in the year afterward, would have placed a reasonable person on notice that more investigation on the viability of their judgments was necessary. Moreover, with reasonable diligence, such an investigation would have easily revealed that the judgments had not been renewed. Thus, although the trial court did not designate a specific date upon which the Rozens had sufficient knowledge of their injury, we cannot conclude that the evidence preponderates against its finding that the Rozens' claim accrued more than one year prior to the filing of their complaint. *Accord* ***Irvin v. Bass, Berry & Sims, PLC***, No. 2014-00671-COA-R3-CV, 2015 WL 9946272 (Tenn. Ct. App. Apr. 15, 2015) (finding that "with the exercise of diligence," a client could have known of an alleged injury years before filing a legal malpractice action); ***Webster v. Whitworth***, 63 S.W. 290, 302 (Tenn. Ch. App. 1901) (in a case involving the statute of limitations and an effort to hold corporate directors individually liable for a corporate debt, "[t]he exact date of when complete liquidation occurred and last payments were made by the assignee were not shown, but it was clearly in the six years before the bill was filed"). Because the Rozens filed their complaint more than a year after their cause of action accrued, it is barred by the statute of limitations. Tenn. Code Ann. § 28-3-104(a)(1).

Based on the foregoing, the trial court's finding that the Rozens' legal malpractice claim was barred by the applicable statute of limitations is affirmed. We note that the trial court considered an additional argument in support of its dismissal of the Rozens' complaint: that the Rozens and Wolff Ardis did not have an attorney-client relationship or a subsequent duty to renew the Rozens' judgments. Because the expiration of the statute of limitations is fatal to the Rozens' claim, we need not address this argument nor do we opine as to whether Wolff Ardis committed a breach of the standard of care in this case. These issues are therefore pretermitted.

## IV.  CONCLUSION

The judgment of the Circuit Court of Shelby County is affirmed, and this cause is remanded to the trial court for further proceedings as necessary and consistent with this Opinion. Costs of this appeal are assessed to Appellants Linda L. Rozen and Doron Rozen, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE